**14 PAGES**

WILKE, FLEURY, HOFFELT, GOULD & BIRNEY, LLP
DANIEL L. EGAN (SBN 142631)
degan@wilkefleury.com
MEGAN A. LEWIS (SBN 221263)
mlewis@wilkefleury.com
STEVEN J. WILLIAMSON (SBN 238869)
swilliamson@wilkefleury.com
400 Capitol Mall, Twenty-Second Floor
Sacramento, California 95814

Telephone: (916) 441-2430
Facsimile: (916) 442-6664

Attorneys for Plan Administrator
DAVID D. FLEMMER

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>CWS ENTERPRISES, INC.,<br><br>Debtor. | Case No. 09-26849-C-11<br><br>DC No. WFH-64<br><br>Date: July 31, 2013<br>Time: 10:00 a.m.<br>Dept.: C |

### SUPPLEMENTAL EXHIBIT LIST IN SUPPORT OF MOTION FOR ORDER APPROVING TRANSACTION OUT OF THE ORDINARY COURSE OF BUSINESS WITH DANE SILLER AND OPPORTUNITY FOR OVERBID

Index

| EXHIBIT NO. | DOCUMENT TITLE | PAGE |
|---|---|---|
| D | Redline Promissory Note Purchase Agreement and Assignment (South Yuba Investors, L.P.) | 3-8 |
| E | Redline Promissory Note Purchase Agreement and Assignment (Dale Investments, LLC) | 9-14 |

980545.1

-1-

SUPPLEMENTAL EXHIBIT LIST

| | | |
|---|---|---|
| 1 | DATED: July 30, 2013 | WILKE, FLEURY, HOFFELT, GOULD & BIRNEY, LLP |
| 2 | | |
| 3 | | |
| 4 | | By: _____ |
| 5 | | DANIEL L. EGAN |
| | | Attorneys for Plan Administrator |
| 6 | | DAVID D. FLEMMER |

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

980545.1

-2-

SUPPLEMENTAL EXHIBIT LIST

**PROMISSORY NOTE PURCHASE AGREEMENT AND ASSIGNMENT**

This Promissory Note Purchase Agreement and Assignment ("Agreement") is made as of July 31, 2013 by and between CWS Enterprises, Inc. ("Seller"), acting through David D. Flemmer, in his capacity as Plan Administrator ("Plan Administrator"), and _____,South Yuba Investors, L.P., a California _____limited partnership ("Purchaser".)

## ARTICLE I

## RECITALS

1.1     CWS Enterprises, Inc. ("CWS") was created in 2007 in connection with a settlement of litigation between Charles Siller and others. As part of the settlement, CWS received title to certain real property and cash. Charles Siller received the stock of CWS.

1.2     On or about January 14, 2009 CWS transferred real property located in Sutter County and known as Newkon Ranch, APN 23-040-001, 23-040-004, 23-040-005, 23-040-062, 23-040-64 and 23-380-077 (the "Newkon Ranch") to Dane and Lisa Siller. In exchange, Dane and Lisa Siller executed a promissory note in the amount of $2,070,000 to CWS (The "Original Newkon Ranch Note.") The Original Newkon Ranch Note was secured by a deed of trust (the "Deed of Trust") on the Newkon Ranch.

1.3     On April 2, 2009 CWS commenced a voluntary case under Chapter 11 of the Bankruptcy Code. On June 22, 2009 the United States Bankruptcy Court ordered that a trustee be appointed. David D. Flemmer ("Trustee") was appointed as the Chapter 11 Trustee in CWS' Chapter 11 case.

1.4     On or about May 21, 2010 Dane and Lisa Siller and Trustee entered into that certain Settlement Agreement and Release dated, for reference purposes, as of January 10, 2010. Pursuant to the Settlement Agreement and Release Agreement, the Sillers executed that certain Amended and Restated Promissory Note Secured By Real Property (Newkon Ranch) (the "Restated Promissory Note."). A true and correct copy of the Restated Promissory Note is attached as Exhibit A hereto.

1.5     On April 16, 2012, the Bankruptcy Court entered that certain Order Approving Confirmation of Third Amended Joint Plan of Reorganization for CWS Enterprises, Inc. and Charles W. Siller, dated March 14, 2012 (the "Joint Plan"). Pursuant to the Joint Plan, David D. Flemmer was appointed as Plan Administrator of CWS.

1.6     Plan Administrator contends that Dane and Lisa Siller have made no payments on account of the Restated Promissory Note. Dane and Lisa Siller dispute this assertion.

1

Case 09-26849    Filed 07/30/13    Doc 1176

## ARTICLE II

## AGREEMENT

Based upon the foregoing, Seller and Purchaser agree as follows:

2.1  Purchase and Sale: At the closing of the transaction, Seller will sell and assign to Purchaser the Restated Promissory Note and Deed of Trust, Such sale shall be an absolute sale without recourse, and shall not be construed as a financing tool, assignment for security or any other arrangement other than as an absolute sale and assignment. The sale is an "as-is" sale.

2.2  Purchase Price: In consideration of the sale of the Restated Promissory Note and Deed of Trust, Purchaser shall pay Seller the Purchase Price in readily available funds at closing. The Purchase Price shall be the highest amount bid by Purchaser at the hearing held before the United States Bankruptcy Court on Seller's motion for approval of this agreement (the "Purchase Price".) If requested by Seller, Purchaser shall execute a written confirmation of the Purchase Price in form reasonably requested by Seller.

2.3  Interim Payments. Any payments (including insurance or condemnation proceeds) received by Seller with respect to the Restated Promissory Note after the conclusion of the hearing on the motion for approval of this agreement and before the close of escrow shall be the property of Seller and shall not be subject to any claim or lien whatsoever of Purchaser. Notwithstanding the foregoing, any such payment described in the preceding sentence, if received by Seller, shall be applied at Closing toward the Purchase Price.

2.4  Closing: The transaction shall be accomplished through a conventional real property escrow at First American Title Insurance Company, Sacramento, California. The costs of title insurance shall be paid by Purchaser. All other costs and expenses shall be shared equally by Seller and Purchaser.

2.5  Deliveries at Closing:

    2.5.1  Deliveries by Seller: At the Closing Seller shall deliver to Purchaser the following items:

        2.5.1.1 The original of the Restated Promissory Note;

        2.5.1.2 An executed assignment of the Restated Promissory Note, in form reasonably requested by Purchaser; and

        2.5.1.3 An executed assignment of the Deed of Trust, in form reasonably requested by Purchaser.

        2.5.1.4 An assignment of Seller's rights under the Forbearance Option Agreement dated June 4, 2013.

    2.5.2  Deliveries by Purchaser: At the Closing, Seller shall deliver to Purchaser the following items:

Case 09-26849    Filed 07/30/13    Doc 1176

2.5.2.1 The Purchase Price. At Closing Seller shall be authorized to apply the Deposit toward the Purchase Price.

2.6     Closing Date: Closing shall occur on the fifteenth calendar day occurring after the entry of an order of the Bankruptcy Court approving this transaction, except that if such date falls on a day that is not a business day, the closing shall occur on the next business day.

2.7     Deposit. On or before July 29, 2013, Purchaser agrees to provide a $100,000 deposit (the "Deposit") to Plan Administrator. The Deposit shall be refundable to Purchaser unless and until the conditions precedent set forth in Article 3.2 below are satisfied. Immediately upon satisfaction of the conditions precedent set forth in Section 3.2, the Deposit shall be released to the Plan Administrator. If this Agreement is terminated prior to Closing for breach by Seller, Plan Administrator shall refund the Deposit to Purchaser. If the Purchaser fails to close the transaction for any reason other than breach by Seller, Seller shall be entitled to apply the Deposit toward damages arising from breach of this Agreement, but the deposit does not constitute liquidated damages or a limit on Purchaser's liability for damages.

2.8     Representations or Warranties by Seller. Seller will represent and warrant that as of the date of Closing:

2.8.1   CWS Enterprises, Inc. is the legal and beneficial owner of the Promissory Note being assigned by it hereunder and that such interest is free and clear of any liens or other adverse claims of ownership;

2.8.2   CWS Enterprises, Inc. has full power and authority, and has taken all action necessary, to execute and deliver this Agreement and to consummate the transactions contemplated by it;

2.8.3   Except as disclosed to Purchaser, to the best of Plan Administrator's knowledge, Seller has not received any payments against the Restated Promissory Note; and

2.8.4   Except for the foregoing Seller makes no representations or warranties regarding the rights and assets being sold to Purchaser. Without limiting the foregoing, Seller makes no representations or warranties regarding the current indebtedness or enforceability of the Restated Promissory Note or Deed of Trust, or the value or condition of the real property encumbered by the Deed of Trust.

2.9     Representations by Purchaser. Purchaser represents as follows:

2.9.1   The transaction memorialized herein is an "as-is" sale and Seller has made no express or implied representations or warranties except as set forth in Section 2.7 above. Purchaser represents and warrants that it has had an ample opportunity to investigate the facts and circumstances underlying the Restated Promissory Note, the Deed of Trust, the Newkon Ranch and all other aspects of the transaction, and has independently reached its conclusions regarding the value of the assets, the enforceability of the instruments purchased herein, and all other aspects of the transaction. Purchaser represents and warrants that it has not relied upon any representations or statements of Sellers or any representative of Seller, and has not relied on any purported duty of Seller or its representatives to disclose facts, in reaching its decision to enter into this transaction.

2.9.2    Neither Charles Siller, Seller, or anyone acting on their behalf, has made any representation or warranty to Purchaser regarding the rights and assets being sold to Purchaser, or the enforceability of the Promissory Note or Deed of Trust, or the value or condition of the real property encumbered by the Deed of Trust.

2.9.3    Purchaser has made no oral or written agreements with anyone other than Seller with respect to the Restated Promissory Note, the Deed of Trust, or the real property encumbered by the Deed of Trust.

2.10    Covenant of Purchaser. Purchaser shall not obtain any personal judgment against Dane Siller or Lisa Siller, or any other payor under the Restated Promissory Note, for money owed under the Restated Promissory Note or Deed of Trust. Without limiting the foregoing, in the event of breach or other non-compliance with this provision resulting in a judgment or other claim by Purchaser against Dane and Lisa Siller based on the Restated Promissory Note or Deed of Trust, Purchaser shall transfer such judgment claim to Seller at no additional consideration. The foregoing shall not impair Purchaser's right to pursue foreclosure of the Deed of Trust by any available means, including judicial foreclosure or an action for tortious waste to the extent attributable to actions after the date hereof, condemnation proceeds or insurance proceeds.

## ARTICLE III

## CONDITIONS PRECEDENT

3.1    Conditions Precedent to Obligations of Seller. Plan Administrator's obligations pursuant to this Agreement are subject to the following conditions precedent:

3.1.1    Timely receipt of the Deposit as set forth in Paragraph 2.7.

3.1.2    Timely receipt of the balance of the Purchase Price set forth in Paragraph 2.2.

3.1.3    Selection of Purchaser as the highest bidder at the hearing on the motion for approval of this agreement, or selection of Purchaser as a backup bidder provided that the highest bidder has failed to close on the transaction.

3.1.4    Entry of an order of the Bankruptcy Court with jurisdiction over the Chapter 11 Case of CWS approving this Agreement and the transactions described herein.

3.2    Conditions Precedent to Obligations of Purchaser. Purchaser's obligations pursuant to this Agreement are subject to the following conditions precedent:

3.2.1    Selection of Purchaser as the highest bidder at the hearing on the motion for approval of this agreement, or selection of Purchaser as a backup bidder provided that the highest bidder has failed to close on the transaction.

3.2.2    Entry of an order of the Bankruptcy Court with jurisdiction over the Chapter 11 Case of CWS approving this Agreement and the transactions described herein.

3.2.3  Delivery of all documents to be delivered to Purchaser at closing pursuant to paragraph 2.5 of this Agreement.

## ARTICLE IV

### MISCELLANEOUS PROVISIONS

4.1  Choice of Law. This Agreement shall be governed by, and construed in accordance with, the laws of the State of California.

4.2  Time of the Essence. The parties agree that time is of the essence with respect to the parties' obligations hereunder and that timely performance of their obligations hereunder is a substantial consideration for each party's agreement and release hereunder. For this reason, any delay in satisfaction of any obligation hereunder is a material breach.

4.3  Waiver, Modification and Amendment. The parties may not waive any provision of this Agreement except by a written agreement that all of the parties have signed. A waiver of any provision of this Agreement will not constitute a waiver of any other provision. The parties may modify or amend this Agreement only by a written agreement that all of the parties have signed.

4.4  Titles and Captions. The headings used in this Agreement are for reference only and are not a part of this Agreement.

4.5  Entire Agreement. This Agreement contains the entire agreement of the parties with respect to the matters covered by this Agreement. No promise or representation made by any party or by an officer, attorney or agent of any party that is not expressly contained in this Agreement shall be binding or valid. Additionally, any modification of any provision of this Agreement, to be effective, must be in writing and signed by the party or parties to be charged.

4.6  Execution of Additional Documents. The parties agree to execute and deliver any and all additional papers, documents, instruments and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of the parties.

4.7  Execution of this Agreement. The parties may execute this Agreement in one or more counterparts, each of which constitutes an original, and all of which constitute one and the same Agreement. A facsimile or copy of this Agreement executed by the parties, whether complete or in counterparts, will constitute sufficient evidence of the executed original of this Agreement for all purposes.

4.8  Attorneys' Fees and Costs. In the event of breach of this agreement, the prevailing party in any action to recover damages or equitable relief shall be entitled to recover their reasonable attorneys' fees and costs.

4.9 <u>Binding on Successors and Assigns</u>. This Agreement shall be binding upon and inure to the benefit of the respective successors, predecessors, heirs, assigns, officers, directors, shareholders, employees, partners, agents and attorneys of the parties to the extent provided by law.

4.10 <u>Jurisdiction</u>. The Bankruptcy Court shall retain jurisdiction over any dispute arising under this Agreement or relating to the Property.

4.11 <u>Capacity of Plan Administrator</u>. The parties acknowledge that David D. Flemmer is acting solely in his capacity as Plan Administrator of CWS in this matter and has no personal liability whatsoever with respect to this Agreement or the transactions described herein.

SELLER:

DATED: _____    CWS Enterprises, Inc., a California corporation

By:_____
    David D. Flemmer
    Plan Administrator of
    CWS Enterprises, Inc.

PURCHASER:

~~By:~~ _____

~~Its:~~ _____ DATED: _____

South Yuba Investors, L.P.,
a California limited partnership

By: South Yuba Investors, LLC, a
    California limited liability company,
    General Partner

By: _____
    Richard A. Leland
    Manger

[Formatted: Indent: Left: 3.5", First line: 0.5", Space After: 0 pt]

6

**PROMISSORY NOTE PURCHASE AGREEMENT AND ASSIGNMENT**

This Promissory Note Purchase Agreement and Assignment ("Agreement") is made as of July 31, 2013 by and between CWS Enterprises, Inc. ("Seller"), acting through David D. Flemmer, in his capacity as Plan Administrator ("Plan Administrator"), and Dale Investments, LLC, _____, a California limited liability company_____ ("Purchaser".)

## ARTICLE I

## RECITALS

1.1     CWS Enterprises, Inc. ("CWS") was created in 2007 in connection with a settlement of litigation between Charles Siller and others. As part of the settlement, CWS received title to certain real property and cash. Charles Siller received the stock of CWS.

1.2     On or about January 14, 2009 CWS transferred real property located in Sutter County and known as Newkon Ranch, APN 23-040-001, 23-040-004, 23-040-005, 23-040-062, 23-040-64 and 23-380-077 (the "Newkon Ranch") to Dane and Lisa Siller. In exchange, Dane and Lisa Siller executed a promissory note in the amount of $2,070,000 to CWS (The "Original Newkon Ranch Note.") The Original Newkon Ranch Note was secured by a deed of trust (the "Deed of Trust") on the Newkon Ranch.

1.3     On April 2, 2009 CWS commenced a voluntary case under Chapter 11 of the Bankruptcy Code. On June 22, 2009 the United States Bankruptcy Court ordered that a trustee be appointed. David D. Flemmer ("Trustee") was appointed as the Chapter 11 Trustee in CWS' Chapter 11 case.

1.4     On or about May 21, 2010 Dane and Lisa Siller and Trustee entered into that certain Settlement Agreement and Release dated, for reference purposes, as of January 10, 2010. Pursuant to the Settlement Agreement and Release Agreement, the Sillers executed that certain Amended and Restated Promissory Note Secured By Real Property (Newkon Ranch) (the "Restated Promissory Note."). A true and correct copy of the Restated Promissory Note is attached as Exhibit A hereto.

1.5     On April 16, 2012, the Bankruptcy Court entered that certain Order Approving Confirmation of Third Amended Joint Plan of Reorganization for CWS Enterprises, Inc. and Charles W. Siller, dated March 14, 2012 (the "Joint Plan"). Pursuant to the Joint Plan, David D. Flemmer was appointed as Plan Administrator of CWS.

1.6     Plan Administrator contends that Dane and Lisa Siller have made no payments on account of the Restated Promissory Note. Dane and Lisa Siller dispute this assertion.

Case 09-26849    Filed 07/30/13    Doc 1176

## ARTICLE II

## AGREEMENT

Based upon the foregoing, Seller and Purchaser agree as follows:

2.1     Purchase and Sale: At the closing of the transaction, Seller will sell and assign to Purchaser the Restated Promissory Note and Deed of Trust, Such sale shall be an absolute sale without recourse, and shall not be construed as a financing tool, assignment for security or any other arrangement other than as an absolute sale and assignment. The sale is an "as-is" sale.

2.2     Purchase Price: In consideration of the sale of the Restated Promissory Note and Deed of Trust, Purchaser shall pay Seller the Purchase Price in readily available funds at closing. The Purchase Price shall be the highest amount bid by Purchaser at the hearing held before the United States Bankruptcy Court on Seller's motion for approval of this agreement (the "Purchase Price".) If requested by Seller, Purchaser shall execute a written confirmation of the Purchase Price in form reasonably requested by Seller.

2.3     Interim Payments. Any payments (including insurance or condemnation proceeds) received by Seller with respect to the Restated Promissory Note after the conclusion of the hearing on the motion for approval of this agreement and before the close of escrow shall be the property of Seller and shall not be subject to any claim or lien whatsoever of Purchaser. Notwithstanding the foregoing, any such payment described in the preceding sentence, if received by Seller, shall be applied at Closing toward the Purchase Price.

2.4     Closing: The transaction shall be accomplished through a conventional real property escrow at First American Title Insurance Company, Sacramento, California. The costs of title insurance shall be paid by Purchaser. All other costs and expenses shall be shared equally by Seller and Purchaser.

2.5     Deliveries at Closing:

2.5.1   Deliveries by Seller: At the Closing Seller shall deliver to Purchaser the following items:

2.5.1.1 The original of the Restated Promissory Note;

2.5.1.2 An executed assignment of the Restated Promissory Note, in form reasonably requested by Purchaser; and

2.5.1.3 An executed assignment of the Deed of Trust, in form reasonably requested by Purchaser.

2.5.2   Deliveries by Purchaser: At the Closing, Seller shall deliver to Purchaser the following items:

2.5.2.1 The Purchase Price. At Closing Seller shall be authorized to apply the Deposit toward the Purchase Price.

2.6   Closing Date: Closing shall occur on the fifteenth calendar day occurring after the entry of an order of the Bankruptcy Court approving this transaction, except that if such date falls on a day that is not a business day, the closing shall occur on the next business day.

2.7   Deposit. On or before July 29, 2013, Purchaser agrees to provide a $100,000 deposit (the "Deposit") to Plan Administrator. The Deposit shall be refundable to Purchaser unless and until the conditions precedent set forth in Article 3.2 below are satisfied. Immediately upon satisfaction of the conditions precedent set forth in Section 3.2, the Deposit shall be released to the Plan Administrator. If this Agreement is terminated prior to Closing for breach by Seller, Plan Administrator shall refund the Deposit to Purchaser. If the Purchaser fails to close the transaction for any reason other than breach by Seller, Seller shall be entitled to apply the Deposit toward damages arising from breach of this Agreement, but the deposit does not constitute liquidated damages or a limit on Purchaser's liability for damages.

2.8   Representations or Warranties by Seller. Seller will represent and warrant that as of the date of Closing:

2.8.1   CWS Enterprises, Inc. is the legal and beneficial owner of the Promissory Note being assigned by it hereunder and that such interest is free and clear of any liens or other adverse claims of ownership;

2.8.2   CWS Enterprises, Inc. has full power and authority, and has taken all action necessary, to execute and deliver this Agreement and to consummate the transactions contemplated by it;

2.8.3   ~~Except as disclosed to Purchaser, t~~To the best of Plan Administrator's knowledge, Seller has not received any payments against the Restated Promissory Note; and

2.8.4   Except for the foregoing Seller makes no representations or warranties regarding the rights and assets being sold to Purchaser. Without limiting the foregoing, Seller makes no representations or warranties regarding the current indebtedness or enforceability of the Restated Promissory Note or Deed of Trust, or the value or condition of the real property encumbered by the Deed of Trust.

2.9   Representations by Purchaser. Purchaser represents as follows:

2.9.1   The transaction memorialized herein is an "as-is" sale and Seller has made no express or implied representations or warranties except as set forth in Section 2.7 above. Purchaser represents and warrants that it has had an ample opportunity to investigate the facts and circumstances underlying the Restated Promissory Note, the Deed of Trust, the Newkon Ranch and all other aspects of the transaction, and has independently reached its conclusions regarding the value of the assets, the enforceability of the instruments purchased herein, and all other aspects of the transaction. Purchaser represents and warrants that it has not relied upon any representations or statements of Sellers or any representative of Seller, and has not relied on any purported duty of Seller or its representatives to disclose facts, in reaching its decision to enter into this transaction.

2.9.2   Neither Charles Siller, Seller, or anyone acting on their behalf, has made any representation or warranty to Purchaser regarding the rights and assets being sold to Purchaser, or

the enforceability of the Promissory Note or Deed of Trust, or the value or condition of the real property encumbered by the Deed of Trust.

        2.9.3    Purchaser has made no oral or written agreements with anyone other than Seller with respect to the Restated Promissory Note, the Deed of Trust, or the real property encumbered by the Deed of Trust.

    2.10    <u>Covenant of Purchaser</u>.  Purchaser shall not obtain any personal judgment against Dane Siller or Lisa Siller, or any other payor under the Restated Promissory Note, for money owed under the Restated Promissory Note or Deed of Trust. Without limiting the foregoing, in the event of breach or other non-compliance with this provision resulting in a judgment or other claim by Purchaser against Dane and Lisa Siller based on the Restated Promissory Note or Deed of Trust, Purchaser shall transfer such judgment claim to Seller at no additional consideration. The foregoing shall not impair Purchaser's right to pursue foreclosure of the Deed of Trust by any available means, including judicial foreclosure.

## ARTICLE III

## CONDITIONS PRECEDENT

    3.1    <u>Conditions Precedent to Obligations of Seller</u>. Plan Administrator's obligations pursuant to this Agreement are subject to the following conditions precedent:

        3.1.1    Timely receipt of the Deposit as set forth in Paragraph 2.7.

        3.1.2    Timely receipt of the balance of the Purchase Price set forth in Paragraph 2.2.

        3.1.3    Selection of Purchaser as the highest bidder at the hearing on the motion for approval of this agreement, or selection of Purchaser as a backup bidder provided that the highest bidder has failed to close on the transaction.

        3.1.4    Entry of an order of the Bankruptcy Court with jurisdiction over the Chapter 11 Case of CWS approving this Agreement and the transactions described herein.

    3.2    <u>Conditions Precedent to Obligations of Purchaser</u>. Purchaser's obligations pursuant to this Agreement are subject to the following conditions precedent:

        3.2.1    Selection of Purchaser as the highest bidder at the hearing on the motion for approval of this agreement, or selection of Purchaser as a backup bidder provided that the highest bidder has failed to close on the transaction.

        3.2.2    Entry of an order of the Bankruptcy Court with jurisdiction over the Chapter 11 Case of CWS approving this Agreement and the transactions described herein.

        3.2.3    Delivery of all documents to be delivered to Purchaser at closing pursuant to paragraph 2.5 of this Agreement.

# ARTICLE IV

## MISCELLANEOUS PROVISIONS

4.1     Choice of Law.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of California.

4.2     Time of the Essence.  The parties agree that time is of the essence with respect to the parties' obligations hereunder and that timely performance of their obligations hereunder is a substantial consideration for each party's agreement and release hereunder.  For this reason, any delay in satisfaction of any obligation hereunder is a material breach.

4.3     Waiver, Modification and Amendment.  The parties may not waive any provision of this Agreement except by a written agreement that all of the parties have signed.  A waiver of any provision of this Agreement will not constitute a waiver of any other provision.  The parties may modify or amend this Agreement only by a written agreement that all of the parties have signed.

4.4     Titles and Captions.  The headings used in this Agreement are for reference only and are not a part of this Agreement.

4.5     Entire Agreement.  This Agreement contains the entire agreement of the parties with respect to the matters covered by this Agreement.  No promise or representation made by any party or by an officer, attorney or agent of any party that is not expressly contained in this Agreement shall be binding or valid.  Additionally, any modification of any provision of this Agreement, to be effective, must be in writing and signed by the party or parties to be charged.

4.6     Execution of Additional Documents.  The parties agree to execute and deliver any and all additional papers, documents, instruments and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of the parties.

4.7     Execution of this Agreement.  The parties may execute this Agreement in one or more counterparts, each of which constitutes an original, and all of which constitute one and the same Agreement.  A facsimile or copy of this Agreement executed by the parties, whether complete or in counterparts, will constitute sufficient evidence of the executed original of this Agreement for all purposes.

4.8     Attorneys' Fees and Costs.  In the event of breach of this agreement, the prevailing party in any action to recover damages or equitable relief shall be entitled to recover their reasonable attorneys' fees and costs.

4.9     Binding on Successors and Assigns.  This Agreement shall be binding upon and inure to the benefit of the respective successors, predecessors, heirs, assigns, officers, directors, shareholders, employees, partners, agents and attorneys of the parties to the extent provided by law.

4.10    Jurisdiction.  The Bankruptcy Court shall retain jurisdiction over any dispute arising under this Agreement or relating to the Property.

996.007-1479184. 25

4.11 <u>Capacity of Plan Administrator</u>. The parties acknowledge that David D. Flemmer is acting solely in his capacity as Plan Administrator of CWS in this matter and has no personal liability whatsoever with respect to this Agreement or the transactions described herein.

SELLER:

DATED: _____

CWS Enterprises, Inc., a California corporation

By: _____
David D. Flemmer
Plan Administrator of
CWS Enterprises, Inc.

PURCHASER:

Dale Investments, LLC,
a California limited liability
company

DATED: _____

By: _____
Sundeep S. Dale, its Member

Its: _____