# 41 PAGES

WILKE, FLEURY, HOFFELT, GOULD & BIRNEY, LLP
DANIEL L. EGAN (SBN 142631)
degan@wilkefleury.com
MEGAN A. LEWIS (SBN 221263)
mlewis@wilkefleury.com
STEVEN J. WILLIAMSON (SBN 238869)
swilliamson@wilkefleury.com
400 Capitol Mall, Twenty-Second Floor
Sacramento, California 95814

Telephone:    (916) 441-2430
Facsimile:    (916) 442-6664

Attorneys for Plan Administrator
DAVID D. FLEMMER

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| In re | Case No. 09-26849-C-11 |
| CWS ENTERPRISES, INC., | DC No. WFH-64 |
| Debtor. | Date:    July 31, 2013 |
| | Time:    10:00 a.m. |
| | Dept.:    C |

## ORDER APPROVING SALE OF PROMISSORY NOTE

The Court having held a hearing on the motion of David D. Flemmer, Plan Administrator ("Plan Administrator") for CWS Enterprises, Inc. ("Reorganized Debtor"), for approval of a transaction out of the ordinary course of business with Dane and Lisa Siller; other parties having appeared and submitted overbids; and good cause appearing:

IT IS HEREBY ORDERED THAT:

1.    Plan Administrator is authorized to enter into that certain Promissory Note Purchase Agreement and Assignment with Dale Investments, LLC on the terms set forth in the agreement attached hereto as Exhibit A, with the following modifications;

    a.    The purchase price   is   $ 3,850,000;

    b.    The assets to be purchased shall not include any attorneys' fees or costs

RHS

RECEIVED
August 05, 2013
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0004910264

1  incurred prior to August 1, 2013 and recoverable under the promissory note, deed of trust or other

2  documents;

3      2.      If Dale Investments, LLC fails to close on the transaction set forth on the attached

4  Exhibit A in the time frame provided by such agreement (including any additional time reasonably

5  required to implement the transaction), Plan Administrator is authorized to enter into, and Dane and

6  Lisa Siller shall be obligated pursuant to, that certain Forbearance and Option Agreement attached

7  hereto as Exhibit B, with the following modifications:

8          a.      The option price set forth in paragraph 2.8 of the Forbearance and Option

9  Agreement is changed to $3,825,000;

10     3.      If Dane and Lisa Siller fail to close on the transaction set forth on the attached Exhibit

11 B in the time frame provided by such agreement (including any additional time reasonably required to

12 implement the transaction), Plan Administrator is authorized to enter into, and South Yuba Investors,

13 L.P. shall be obligated pursuant to, that certain Promissory Note Purchase Agreement and Assignment

14 attached hereto as Exhibit C,  with the following modifications;

15         a.      The purchase price   is    $ 3,700,000;

16         b.      The assets to be purchased shall not include any attorneys' fees or costs

17 incurred prior to August 1, 2013 and recoverable under the promissory note, deed of trust or other

18 documents;

19         c.      The Closing Date set forth in paragraph 2.6 shall be changed to the date 45

20 calendar days following entry of this order;

21     ///

22     ///

23     ///

24     ///

25     ///

26     ///

27     ///

28     ///

RHS

WILKE, FLEURY, HOFFELT, GOULD & BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

980959.1                    -2-
ORDER APPROVING SALE OF PROMISSORY NOTE

1        4.      Plan Administrator is authorized to take all actions necessary to perform the obligations

2  of CWS Enterprises, Inc. under the agreements described above.

3

4  APPROVED AS TO FORM:
   Michelson Law Group

5

6  By: _____
         Randy Michelson, Attorneys for

7        Charles W. Siller

8
   APPROVED AS TO FORM:
9  Murphy Austin Adams Schoenfeld, LLP

10 By: _____
         Keeva G. Coe, Attorneys for

11       Dale Investments, LLC

12
   APPROVED AS TO FORM:
13 Law Office of Frederick H. Schill

14 By: _____
         Frederick H. Schill, Attorneys for

15       South Yuba Investors, LP

16

17 APPROVED AS TO FORM:

18 By: _____
         Dane Siller

19

20

21 Dated: August 06, 2013              By the Court

22

23

24                                     Ronald H. Sargis, Judge
                                       United States Bankruptcy Court

25

26

27

28

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

980959.1                              -3-
                       ORDER APPROVING SALE OF PROMISSORY NOTE

1    4.    Plan Administrator is authorized to take all actions necessary to perform the obligations

2 of CWS Enterprises, Inc. under the agreements described above.

3

4 APPROVED AS TO FORM:
  Michelson Law Group

5

6 By: _____
      Randy Michelson, Attorneys for

7     Charles W. Siller

8

  APPROVED AS TO FORM:
9 Murphy Austin Adams Schoenfeld, LLP

10 By: _____
      Keeva G. Coe, Attorneys for

11     Dale Investments, LLC

12

13 APPROVED AS TO FORM:
  Law Office of Frederick H. Schill

14

15 By: _____
      Frederick H. Schill, Attorneys for

16     South Yuba Investors, LP

17

  APPROVED AS TO FORM:
18

19 By: _____
      Dane Siller

20

21

22

23 Dated: _____        _____

24                              United States Bankruptcy Judge

25

26

27

28

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

980959.1                              -3-
                    ORDER APPROVING SALE OF PROMISSORY NOTE

1       4.      Plan Administrator is authorized to take all actions necessary to perform the obligations

2  of CWS Enterprises, Inc. under the agreements described above.

3

4  APPROVED AS TO FORM:
    Michelson Law Group

5

6  By: _____
        Randy Michelson, Attorneys for

7        Charles W. Siller

8

    APPROVED AS TO FORM:

9  Murphy Austin Adams Schoenfeld, LLP

10

    By: _____

11        Keeva G. Coe, Attorneys for
        Dale Investments, LLC

12

13  APPROVED AS TO FORM:
    Law Office of Frederick H. Schill

14

    By: _____

15        Frederick H. Schill, Attorneys for
        South Yuba Investors, LP

16

17

    APPROVED AS TO FORM:

18

    By: _____

19        Dane Siller

20

21

22

23  Dated: _____       _____

24                    United States Bankruptcy Judge

25

26

27

28

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

1        4.     Plan Administrator is authorized to take all actions necessary to perform the obligations

2  of CWS Enterprises, Inc. under the agreements described above.

3

4  APPROVED AS TO FORM:
    Michelson Law Group

5

6  By: _____
        Randy Michelson, Attorneys for

7        Charles W. Siller

8

9  APPROVED AS TO FORM:
    Murphy Austin Adams Schoenfeld, LLP

10  By: _____

11        Keeva G. Coe, Attorneys for
        Dale Investments, LLC

12

13  APPROVED AS TO FORM:
    Law Office of Frederick H. Schill

14

15  By: _____
        Frederick H. Schill, Attorneys for

16        South Yuba Investors, LP

17

18  APPROVED AS TO FORM:

19  By: _____
        Dane Siller

20

21

22

23  Dated: _____      _____

24                         United States Bankruptcy Judge

25

26

27

28

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

980959.1                      -3-
ORDER APPROVING SALE OF PROMISSORY NOTE

1    4.    Plan Administrator is authorized to take all actions necessary to perform the obligations

2 of CWS Enterprises, Inc. under the agreements described above.

3

4 APPROVED AS TO FORM:
Michelson Law Group
5

6 By: _____
     Randy Michelson, Attorneys for
7    Charles W. Siller

8
APPROVED AS TO FORM:
9 Murphy Austin Adams Schoenfeld, LLP

10 By: _____
     Keeva G. Coe, Attorneys for
11    Dale Investments, LLC

12

13 APPROVED AS TO FORM:
Law Office of Frederick H. Schill
14

15 By: _____
     Frederick H. Schill, Attorneys for
16    South Yuba Investors, LP

17

18 APPROVED AS TO FORM:

19 By: _____
     Dane Siller

20

21

22

23 Dated: _____    _____
                                          United States Bankruptcy Judge
24

25

26

27

28

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

980959.1                                  -3-
                        ORDER APPROVING SALE OF PROMISSORY NOTE

## PROMISSORY NOTE PURCHASE AGREEMENT AND ASSIGNMENT

This Promissory Note Purchase Agreement and Assignment ("Agreement") is made as of July 31, 2013 by and between CWS Enterprises, Inc. ("Seller"), acting through David D. Flemmer, in his capacity as Plan Administrator ("Plan Administrator"), and Dale Investments, LLC, , a California limited liability company ("Purchaser".)

### ARTICLE I

### RECITALS

1.1    CWS Enterprises, Inc. ("CWS") was created in 2007 in connection with a settlement of litigation between Charles Siller and others. As part of the settlement, CWS received title to certain real property and cash. Charles Siller received the stock of CWS.

1.2    On or about January 14, 2009 CWS transferred real property located in Sutter County and known as Newkon Ranch, APN 23-040-001, 23-040-004, 23-040-005, 23-040-062, 23-040-64 and 23-380-007 (the "Newkon Ranch") to Dane and Lisa Siller. In exchange, Dane and Lisa Siller executed a promissory note in the amount of $2,070,000 to CWS (The "Original Newkon Ranch Note.") The Original Newkon Ranch Note was secured by a deed of trust (the "Deed of Trust") on the Newkon Ranch.

1.3    On April 2, 2009 CWS commenced a voluntary case under Chapter 11 of the Bankruptcy Code. On June 22, 2009 the United States Bankruptcy Court ordered that a trustee be appointed. David D. Flemmer ("Trustee") was appointed as the Chapter 11 Trustee in CWS' Chapter 11 case.

1.4    On or about May 21, 2010 Dane and Lisa Siller and Trustee entered into that certain Settlement Agreement and Release dated, for reference purposes, as of January 10, 2010. Pursuant to the Settlement Agreement and Release Agreement, the Sillers executed that certain Amended and Restated Promissory Note Secured By Real Property (Newkon Ranch) (the "Restated Promissory Note."). A true and correct copy of the Restated Promissory Note is attached as Exhibit A hereto.

1.5    On April 16, 2012, the Bankruptcy Court entered that certain Order Approving Confirmation of Third Amended Joint Plan of Reorganization for CWS Enterprises, Inc. and Charles W. Siller, dated March 14, 2012 (the "Joint Plan"). Pursuant to the Joint Plan, David D. Flemmer was appointed as Plan Administrator of CWS.

1.6    Plan Administrator contends that Dane and Lisa Siller have made no payments on account of the Restated Promissory Note. Dane and Lisa Siller dispute this assertion.

996.007-1479184. 2

# ARTICLE II

## AGREEMENT

Based upon the foregoing, Seller and Purchaser agree as follows:

2.1    <u>Purchase and Sale</u>: At the closing of the transaction, Seller will sell and assign to Purchaser the Restated Promissory Note and Deed of Trust, Such sale shall be an absolute sale without recourse, and shall not be construed as a financing tool, assignment for security or any other arrangement other than as an absolute sale and assignment. The sale is an "as-is" sale.

2.2    <u>Purchase Price</u>: In consideration of the sale of the Restated Promissory Note and Deed of Trust, Purchaser shall pay Seller the Purchase Price in readily available funds at closing. The Purchase Price shall be the highest amount bid by Purchaser at the hearing held before the United States Bankruptcy Court on Seller's motion for approval of this agreement (the "Purchase Price".) If requested by Seller, Purchaser shall execute a written confirmation of the Purchase Price in form reasonably requested by Seller.

2.3    <u>Interim Payments</u>. Any payments (including insurance or condemnation proceeds) received by Seller with respect to the Restated Promissory Note after the conclusion of the hearing on the motion for approval of this agreement and before the close of escrow shall be the property of Seller and shall not be subject to any claim or lien whatsoever of Purchaser. Notwithstanding the foregoing, any such payment described in the preceding sentence, if received by Seller, shall be applied at Closing toward the Purchase Price.

2.4    <u>Closing</u>: The transaction shall be accomplished through a conventional real property escrow at First American Title Insurance Company, Sacramento, California. The costs of title insurance shall be paid by Purchaser. All other costs and expenses shall be shared equally by Seller and Purchaser.

2.5    <u>Deliveries at Closing</u>:

2.5.1    Deliveries by Seller:  At the Closing Seller shall deliver to Purchaser the following items:

2.5.1.1 The original of the Restated Promissory Note;

2.5.1.2 An executed assignment of the Restated Promissory Note, in form reasonably requested by Purchaser; and

2.5.1.3 An executed assignment of the Deed of Trust, in form reasonably requested by Purchaser.

2.5.1.4 An assignment of Seller's rights under the Forbearance Option Agreement dated June 4, 2013.

2.5.2    Deliveries by Purchaser: At the Closing, Seller shall deliver to Purchaser the following items:

2

996.007-1479184. 2

2.5.2.1 The Purchase Price. At Closing Seller shall be authorized to apply the Deposit toward the Purchase Price.

2.6     Closing Date:  Closing shall occur on the fifteenth calendar day occurring after the entry of an order of the Bankruptcy Court approving this transaction, except that if such date falls on a day that is not a business day, the closing shall occur on the next business day.

2.7     Deposit. On or before July 29, 2013, Purchaser agrees to provide a $100,000 deposit (the "Deposit") to Plan Administrator. The Deposit shall be refundable to Purchaser unless and until the conditions precedent set forth in Article 3.2 below are satisfied. Immediately upon satisfaction of the conditions precedent set forth in Section 3.2, the Deposit shall be released to the Plan Administrator. If this Agreement is terminated prior to Closing for breach by Seller, Plan Administrator shall refund the Deposit to Purchaser. If the Purchaser fails to close the transaction for any reason other than breach by Seller, Seller shall be entitled to apply the Deposit toward damages arising from breach of this Agreement, but the deposit does not constitute liquidated damages or a limit on Purchaser's liability for damages.

2.8     Representations or Warranties by Seller. Seller will represent and warrant that as of the date of Closing:

2.8.1   CWS Enterprises, Inc. is the legal and beneficial owner of the Promissory Note being assigned by it hereunder and that such interest is free and clear of any liens or other adverse claims of ownership;

2.8.2   CWS Enterprises, Inc. has full power and authority, and has taken all action necessary, to execute and deliver this Agreement and to consummate the transactions contemplated by it;

2.8.3   To the best of Plan Administrator's knowledge, Seller has not received any payments against the Restated Promissory Note; and

2.8.4   Except for the foregoing Seller makes no representations or warranties regarding the rights and assets being sold to Purchaser. Without limiting the foregoing, Seller makes no representations or warranties regarding the current indebtedness or enforceability of the Restated Promissory Note or Deed of Trust, or the value or condition of the real property encumbered by the Deed of Trust.

2.9     Representations by Purchaser.  Purchaser represents as follows:

2.9.1   The transaction memorialized herein is an "as-is" sale and Seller has made no express or implied representations or warranties except as set forth in Section 2.7 above. Purchaser represents and warrants that it has had an ample opportunity to investigate the facts and circumstances underlying the Restated Promissory Note, the Deed of Trust, the Newkon Ranch and all other aspects of the transaction, and has independently reached its conclusions regarding the value of the assets, the enforceability of the instruments purchased herein, and all other aspects of the transaction. Purchaser represents and warrants that it has not relied upon any representations or statements of Sellers or any representative of Seller, and has not relied on any purported duty of Seller or its representatives to disclose facts, in reaching its decision to enter into this transaction.

2.9.2   Neither Charles Siller, Seller, or anyone acting on their behalf, has made any representation or warranty to Purchaser regarding the rights and assets being sold to Purchaser, or the enforceability of the Promissory Note or Deed of Trust, or the value or condition of the real property encumbered by the Deed of Trust.

2.9.3   Purchaser has made no oral or written agreements with anyone other than Seller with respect to the Restated Promissory Note, the Deed of Trust, or the real property encumbered by the Deed of Trust.

2.10   <u>Covenant of Purchaser</u>.  Purchaser shall not obtain any personal judgment against Dane Siller or Lisa Siller, or any other payor under the Restated Promissory Note, for money owed under the Restated Promissory Note or Deed of Trust.  Without limiting the foregoing, in the event of breach or other non-compliance with this provision resulting in a judgment or other claim by Purchaser against Dane and Lisa Siller based on the Restated Promissory Note or Deed of Trust, Purchaser shall transfer such judgment claim to Seller at no additional consideration.  The foregoing shall not impair Purchaser's right to pursue foreclosure of the Deed of Trust by any available means, including judicial foreclosure.

## ARTICLE III

## CONDITIONS PRECEDENT

3.1   <u>Conditions Precedent to Obligations of Seller</u>. Plan Administrator's obligations pursuant to this Agreement are subject to the following conditions precedent:

3.1.1   Timely receipt of the Deposit as set forth in Paragraph 2.7.

3.1.2   Timely receipt of the balance of the Purchase Price set forth in Paragraph 2.2.

3.1.3   Selection of Purchaser as the highest bidder at the hearing on the motion for approval of this agreement, or selection of Purchaser as a backup bidder provided that the highest bidder has failed to close on the transaction.

3.1.4   Entry of an order of the Bankruptcy Court with jurisdiction over the Chapter 11 Case of CWS approving this Agreement and the transactions described herein.

3.2   <u>Conditions Precedent to Obligations of Purchaser</u>.  Purchaser's obligations pursuant to this Agreement are subject to the following conditions precedent:

3.2.1   Selection of Purchaser as the highest bidder at the hearing on the motion for approval of this agreement, or selection of Purchaser as a backup bidder provided that the highest bidder has failed to close on the transaction.

3.2.2   Entry of an order of the Bankruptcy Court with jurisdiction over the Chapter 11 Case of CWS approving this Agreement and the transactions described herein.

3.2.3   Delivery of all documents to be delivered to Purchaser at closing pursuant to paragraph 2.5 of this Agreement.

996.007-1479184. 2

## ARTICLE IV

## MISCELLANEOUS PROVISIONS

4.1     Choice of Law. This Agreement shall be governed by, and construed in accordance with, the laws of the State of California.

4.2     Time of the Essence. The parties agree that time is of the essence with respect to the parties' obligations hereunder and that timely performance of their obligations hereunder is a substantial consideration for each party's agreement and release hereunder. For this reason, any delay in satisfaction of any obligation hereunder is a material breach.

4.3     Waiver, Modification and Amendment. The parties may not waive any provision of this Agreement except by a written agreement that all of the parties have signed. A waiver of any provision of this Agreement will not constitute a waiver of any other provision. The parties may modify or amend this Agreement only by a written agreement that all of the parties have signed.

4.4     Titles and Captions. The headings used in this Agreement are for reference only and are not a part of this Agreement.

4.5     Entire Agreement. This Agreement contains the entire agreement of the parties with respect to the matters covered by this Agreement. No promise or representation made by any party or by an officer, attorney or agent of any party that is not expressly contained in this Agreement shall be binding or valid. Additionally, any modification of any provision of this Agreement, to be effective, must be in writing and signed by the party or parties to be charged.

4.6     Execution of Additional Documents. The parties agree to execute and deliver any and all additional papers, documents, instruments and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of the parties.

4.7     Execution of this Agreement. The parties may execute this Agreement in one or more counterparts, each of which constitutes an original, and all of which constitute one and the same Agreement. A facsimile or copy of this Agreement executed by the parties, whether complete or in counterparts, will constitute sufficient evidence of the executed original of this Agreement for all purposes.

4.8     Attorneys' Fees and Costs. In the event of breach of this agreement, the prevailing party in any action to recover damages or equitable relief shall be entitled to recover their reasonable attorneys' fees and costs.

4.9     Binding on Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the respective successors, predecessors, heirs, assigns, officers, directors, shareholders, employees, partners, agents and attorneys of the parties to the extent provided by law.

4.10     Jurisdiction. The Bankruptcy Court shall retain jurisdiction over any dispute arising under this Agreement or relating to the Property.

996.007-1479184. 2

4.11   <u>Capacity of Plan Administrator.</u>   The parties acknowledge that David D. Flemmer is acting solely in his capacity as Plan Administrator of CWS in this matter and has no personal liability whatsoever with respect to this Agreement or the transactions described herein.

SELLER:

DATED: _____

CWS Enterprises, Inc., a California corporation

By:_____

    David D. Flemmer
    Plan Administrator of
    CWS Enterprises, Inc.

PURCHASER:

Dale Investments, LLC,
a California limited liability company

DATED: 07-31-13

By: _____

    Sundeep S. Dale, its Member

EXHIBIT "C"

AMENDED AND RESTATED PROMISSORY NOTE SECURED BY DEED OF
TRUST (NEWKON RANCH)

$3,150,000                                        January 13, 2009
                                                  Sacramento, California

    FOR VALUE RECEIVED, the undersigned Dane Siller and Lisa Siller
(collectively "Borrower") hereby promise to pay to David D. Flemmer, in his capacity as
Chapter 11 Trustee in the Chapter 11 case of CWS Enterprises, Inc., Case No. 09-26849-
C-11, or order ("Lender"), the principal sum of Three Million One Hundred Fifty
Thousand and 00/100 Dollars ($3,150,000.00), together with interest thereon on the
unpaid principal balance of this Amended and Restated Promissory Note Secured by
Deed of Trust ("Note") outstanding at an annual rate as set forth below from the date of
this Note until fully paid at 400 Capitol Mall, 22nd Floor, Sacramento, California 95814,
or at such other place as Lender may from time to time designate in writing.

    1.   Interest.  Interest on the unpaid principal balance will accrue from January
13, 2009 at an annual rate of Six Percent (6%) per annum.

    2.   Payment.  All sums due under this Note are payable in lawful money of
the United States. Checks constitute payment only when collected.

    3.   Method of Calculating Interest.  Interest shall be computed based on a
360-day year and the actual number of days elapsed. Interest computed based on a 360-
day year is greater than interest computed based on a 365-day year.

    4.   Payments and Maturity Date.  Borrower shall make interest payments as
follows:

| Payment Date | Amount Due |
| --- | --- |
| May 30, 2010 | An amount equal to the rental revenue from the 2009 crop year. |
| May 30, 2011 | An amount equal to the rental revenue from the 2010 crop year. |
| May 30, 2012 | All accrued but unpaid interest through January 13, 2012. |
| May 30, 2013 | The lesser of $189,000 or the interest accrued from January 13, 2012 through January 12, 2013 |
| May 30, 2014 | The lesser of $189,000 or the interest accrued from |

506159.1

EXHIBIT A    PAGE 10

| | January 13, 2013 through January 12, 2014 |
| May 30, 2015 | The lesser of $189,000 or the interest accrued from January 13, 2014 through January 12, 2015 |
| May 30, 2016 | The lesser of $189,000 or the interest accrued from January 13, 2015 through January 12, 2016 |
| May 30, 2017 | The lesser of $189,000 or the interest accrued from January 13, 2016 through January 12, 2017 |
| May 30, 2018 | The lesser of $189,000 or the interest accrued from January 13, 2017 through January 12, 2018 |

On January 13, 2019, all outstanding and unpaid principal plus all accrued and unpaid interest, plus fees, charges and other amounts due, if any, shall be immediately due and payable.

Notwithstanding the foregoing, if by September 30, 2012, (a) all scheduled and filed claims in the Chapter 11 case of CWS Enterprises, Inc. have not been deemed allowed, or adjudicated as allowed, disallowed, or partially allowed by final order of the bankruptcy court, or (b) all allowed claims in the Chapter 11 case of CWS Enterprises, Inc. have not been paid in full, the entire outstanding and unpaid principal, plus all accrued and unpaid interest, plus fees, charges and other amounts due, if any, shall become due and payable on March 31, 2013.

    5.    Default.  On (a) Borrower's failure to pay any installment or other sum due under this Note when due and payable (whether by extension, acceleration, or otherwise), or (b) an Event of Default as defined in any Deed of Trust securing this Note, or (c) any breach of any other promise or obligation in this Note or in any other instrument now or hereafter securing the indebtedness evidenced by this Note, then, and in any such event, Lender may, at its option, declare this Note (including, without limitation, all accrued interest) due and payable immediately regardless of the Maturity Date. Borrower expressly waives notice of the exercise of this option.

    6.    Late Charge.  Borrower acknowledges that default in the payment of any sum due under this Note will result in losses and additional expenses to Lender in servicing the indebtedness evidenced by this Note, handling such delinquent payments, and meeting its other financial obligations. Borrower further acknowledges that the extent of such loss and additional expenses is extremely difficult and impractical to ascertain. Borrower therefore agrees that, if any payment due under this Note is not made when due, a charge of Five Percent (5%) of such payment that is not paid when due would be a reasonable estimate of expenses so incurred (the "Late Charge"). If any payment is not received when due, Borrower shall pay the Late Charge to Lender (without prejudicing or affecting any other rights or remedies of Lender) as liquidated damages to cover expenses

506159.1

EXHIBIT A    PAGE 11

incurred in handling such delinquent payment.

7.    Interest on Default.  In the event that any payment due under this Note is not received by Lender within Five (5) days when due, and in any event from and after the Maturity Date (either according to the terms of this Note or as the result of an acceleration of the then unpaid principal balance under the terms of this Note), the entire unpaid principal balance shall automatically bear an annual interest rate (instead of the rate specified in Paragraph 1) equal to the lesser of (a) Ten Percent (10%) or (b) the maximum interest rate allowed by law (the "Default Rate").

8.    Interest on Interest.  If any interest payment under this Note is not paid when due, the unpaid interest shall be added to the principal of this Note, shall become and be treated as principal, and shall thereafter bear like interest.

9.    Attorney Fees.  Borrower agrees to pay the following costs, expenses, and attorney fees paid or incurred by Lender, or adjudged by a court: (a) reasonable costs of collection and costs, expenses, and attorney fees paid or incurred in connection with the collection or enforcement of this Note, whether or not suit is filed; (b) reasonable costs, expenses, and attorney fees paid or incurred in connection with representing Lender in any bankruptcy, reorganization, receivership, or other proceedings affecting creditors' rights and involving a claim under this Note; (c) reasonable costs, expenses, and attorney fees incurred to protect the lien of the Deed of Trust; and (d) costs of suit and such sum as the court may adjudge as attorney fees in any action to enforce payment of this Note or any part of it.

10.    Waiver.  Borrower, endorsers, and all other persons liable or to become liable on this Note waive presentment, protest, and demand; notice of protest, demand, and dishonor; and all other notices or matters of a like nature.

11.    Notice.  Any notice required to be provided in this Note shall be given in writing and shall be sent (a) for personal delivery by a delivery service that provides a record of the date of delivery, the individual to whom delivery was made, and the address where delivery was made; (b) by first-class certified United States mail, postage prepaid, return receipt requested; or (c) by a nationally recognized overnight courier service, marked for next day business delivery. All notices shall be addressed to the party to whom such notice is to be given at the property address stated in this Note, if any, or to such other address as a party may designate by written notice to the other. All notices shall be deemed effective on the earliest of (a) actual receipt; (b) rejection of delivery; (c) if sent by certified mail, the third day on which regular United States mail delivery service is provided after the day of mailing or, if sent by overnight delivery service, on the next day on which such service makes next-business-day deliveries after the day of sending.

12.    Secured by Deed of Trust.  This Note is secured by that certain Deed of Trust with Assignment of Leases and Rents (the "Deed of Trust") dated as of January 14, 2009 made by Borrower, as trustor, for the benefit of Lender, as beneficiary. A default under any of the terms and provisions of the Deed of Trust shall also constitute a default

under this Note. AS SET FORTH IN THE DEED OF TRUST, IF BORROWER SHALL SELL, CONVEY, OR ALIENATE THE PROPERTY (AS DESCRIBED IN THE DEED OF TRUST), OR ANY PART THEREOF, OR ANY INTEREST THEREIN, OR SHALL BE DIVESTED OF TITLE OR ANY INTEREST THEREIN IN ANY MANNER OR WAY, WHETHER VOLUNTARILY OR INVOLUNTARILY, WITHOUT THE WRITTEN CONSENT OF THE LENDER BEING FIRST HAD AND OBTAINED, LENDER SHALL HAVE THE RIGHT, AT ITS OPTION, TO DECLARE THIS NOTE, OR ANY OTHER INDEBTEDNESS OR OBLIGATION OF BORROWER TO LENDER, IRRESPECTIVE OF THE MATURITY DATE SPECIFIED IN THIS NOTE OR OTHER DOCUMENT EVIDENCING THE SAME, IMMEDIATELY DUE AND PAYABLE.

13.    Forbearance Not a Waiver. If Lender delays in exercising or fails to exercise any of its rights under this Note, that delay or failure shall not constitute a waiver of any Lender rights or of any breach, default, or failure of condition under this Note. No waiver by Lender of any of its rights or of any such breach, default, or failure of condition shall be effective, unless the waiver is expressly stated in a writing signed by Lender.

14.    Assignment. This Note inures to and binds the heirs, legal representatives, successors, and assigns of Borrower and Lender; provided, however, that Borrower may not assign this Note or any proceeds of it, or assign or delegate any of its rights or obligations, without Lender's prior written consent in each instance. Lender in its sole discretion may transfer this Note, and may sell or assign participations or other interests in all or any part of this Note, all without notice to or the consent of Borrower.

15.    Governing Law. This Note shall be construed and enforced according to the laws of the State of California for all purposes.

16.    Usury. All agreements between Borrower and Lender are expressly limited, so that in no event or contingency, whether because of the advancement of the proceeds of this Note, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to Lender for the use, forbearance, or retention of the money to be advanced under this Note exceed the highest lawful rate permissible under applicable usury laws. If, under any circumstances, fulfillment of any provision of this Note or the Deed of Trust securing this Note or any other agreement pertaining to this Note, after timely performance of such provision is due, shall involve exceeding the limit of validity prescribed by law that a court of competent jurisdiction deems applicable, then, ipso facto, the obligations to be fulfilled shall be reduced to the limit of such validity. If, under any circumstances, Lender shall ever receive as interest an amount that exceeds the highest lawful rate, the amount that would be excessive interest shall be applied to reduce the unpaid principal balance under this Note and not to pay interest, or, if such excessive interest exceeds the unpaid principal balance under this Note, such excess shall be refunded to Borrower. This provision shall control every other provision of all agreements between Borrower and Lender.

17.    Time Is of the Essence. Time is of the essence with respect to all

506159.1

obligations of Borrower under this Note.

18.    THIS AMENDED AND RESTATED PROMISSORY NOTE AMENDS AND RESTATES THE OBLIGATIONS UNDER THAT CERTAIN ALL-INCLUSIVE LONG FORM PROMISSORY NOTE SECURED BY ALL-INCLUSIVE LONG FORM DEED OF TRUST DATED JANUARY 14, 2009 IN THE ORIGINAL PRINCIPAL AMOUNT OF $2,070,000 BY DANE AND LISA SILLER, AS MAKER/PAYORS AND CWS ENTERPRISES, INC., A CALIFORNIA CORPORATION, AS PAYEE.

Executed at ~~Sacramento~~ Yuba City DS LS, California, on the 21st day of May ~~2009~~ 2010

BORROWER:

_____
DANE SILLER

_____
LISA SILLER

506159.1

# FORBEARANCE AND OPTION AGREEMENT

This Forbearance and Option Agreement (this "Agreement") is made as of this 4^7^ day of June, 2013 by and between David D. Flemmer, in his capacity as Plan Administrator of CWS Enterprises, Inc. ("Plan Administrator") and Dane and Lisa Siller ("Dane and Lisa Siller".)

## ARTICLE I

## RECITALS

1.1    CWS Enterprises, Inc. ("CWS") was created in 2007 in connection with a settlement of litigation between Charles Siller and others.  As part of the settlement, CWS received title to certain real property and cash.  Charles Siller received the stock of CWS.

1.2    On or about January 14, 2009 CWS transferred real property located in Sutter County and known as Newkon Ranch, APN 23-040-001, 23-040-004, 23-040-005, 23-040-062, 23-040-64 and 23-380-077 (the "Newkon Ranch") to Dane and Lisa Siller.  In exchange, Dane and Lisa Siller executed a promissory note in the amount of $2,070,000 to CWS (The "Original Newkon Ranch Note.")  The Original Newkon Ranch Note was secured by a deed of trust (the "Deed of Trust") on the Newkon Ranch.

1.3    On April 2, 2009 CWS commenced a voluntary case under Chapter 11 of the Bankruptcy Code.  On June 22, 2009 the United States Bankruptcy Court ordered that a trustee be appointed.  David D. Flemmer ("Trustee") was appointed as the Chapter 11 Trustee in CWS' Chapter 11 case.

1.4    On or about May 21, 2010 Dane and Lisa Siller and Trustee entered into that certain Settlement Agreement and Release dated, for reference purposes, as of January 10, 2010.  Pursuant to the Settlement Agreement and Release Agreement, the Sillers executed that certain Amended and Restated Promissory Note Secured By Real Property (Newkon Ranch) (the "Restated Promissory Note.").  A true and correct copy of the Restated Promissory Note is attached as Exhibit A hereto.

1.5    On April 16, 2012, the Bankruptcy Court entered that certain Order Approving Confirmation of Third Amended Joint Plan of Reorganization for CWS Enterprises, Inc. and Charles W. Siller, dated March 14, 2012 (the "Joint Plan").  Pursuant to the Joint Plan, David D. Flemmer was appointed as Plan Administrator of CWS.

1.6    Dane and Lisa Siller have made no payments on account of the Restated Promissory Note.

## ARTICLE II

## AGREEMENT

Based upon the foregoing, Plan Administrator and Dane And Lisa Siller agree as follows:

2.1    <u>Accuracy of Recitals</u>.  Dane and Lisa Siller confirm the accuracy of the recitals set forth above of the date of this Agreement.

9525623

1

2.2    Reaffirmation of Outstanding Indebtedness.    Dane and Lisa Siller and Plan Administrator confirm and agree that, as of May 31, 2013, the outstanding indebtedness under the Restated Promissory Note is as follows:

| | |
|---|---|
| Principal | $3,150,000.00 |
| Interest: | $  917,692.45 |
| Total | $4,067,692.45 |

Dane and Lisa Siller hereby expressly acknowledge and reaffirm the existence, validity and enforceability of their obligations under the Restated Promissory Note and the Deed of Trust. Except as expressly modified by this Agreement, the Restated Promissory Note and Deed of Trust shall remain unmodified and in full force and effect.

2.3    Amounts Currently Due.    Dane and Lisa Siller and Plan Administrator confirm and agree that, as of May 31, 2013, the sum of $756,000 is due and payable under the Restated Promissory Note.

2.4    Existence of Default.    Based upon the nonpayment of the amounts set forth above, Dane and Lisa Siller confirm and agree that the Restated Promissory Note is in default. Dane and Lisa Siller further confirm that Plan Administrator has the authority to declare all sums owed under the Restated Promissory Note to be immediately due and payable.

2.5    Waiver of Defenses and Offsets.    Dane and Lisa Siller waive, release and discharge, as of the date hereof any defenses or setoffs to or other grounds for nonperformance or nonpayment of the obligations under the Restated Promissory Note, the Deed of Trust or any related agreement, whether or not currently asserted by or known to Dane or Lisa Siller, and all other claims or rights they might have against CWS related in any way to the Restated Promissory Note, the Deed of Trust or any related agreement. The foregoing shall not be deemed to be a release of claims Dane and Lisa Siller may have against CWS unrelated to the Restated Promissory Note, the Deed of Trust or related agreements, provided that such claims shall not constitute a defense, setoff or other ground for nonperformance under the Restated Promissory Note, Deed of Trust or any related agreement.

In this connection with the foregoing releases, Dane and Lisa Siller hereby waive any and all rights which exist or may exist under Section 1542 of the California Civil Code and any other comparable provisions or principals of state or federal law, or the common law. Civil Code section 1542 provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

The parties understand and acknowledge the significance and consequences of this specific waiver of California Civil Code section 1542 and any other comparable provision or principal of state or federal law, or the common law, and assume full responsibility for any injuries, damages, losses or liabilities they may hereafter incur by virtue of this waiver.

9525623                          2

2.6    <u>Forbearance</u>. Subject to satisfaction of the conditions precedent set forth below, Plan Administrator agrees to forbear in the exercise of CWS' rights under the Restated Promissory Note and Deed of Trust until the earlier of (i) 60 calendar days following the execution of this Agreement or (ii) 30 calendar days following Bankruptcy Court approval of this Agreement.

2.7    <u>Deposit</u>. On or before June 4, 2013, Dane and Lisa Siller agree to provide a $100,000 deposit (the "Deposit") to Plan Administrator. The Deposit shall be refundable to Dane and Lisa Siller unless and until the conditions precedent set forth in paragraph 2.11 below are satisfied. Immediately upon satisfaction of the conditions precedent set forth in paragraph 2.11, the Deposit shall be released to the Plan Administrator and shall be applied toward the indebtedness under the Restated Promissory Note. The application of the Deposit toward the indebtedness under the Restated Promissory Note shall not constitute a cure of any default under the Restated Promissory Note, or a waiver of default or rights or remedies arising under the Restated Promissory Note. If this Agreement is terminated pursuant to Paragraph 2.12 below, Plan Administrator shall refund the Deposit to Dane and Lisa Siller within 5 days of notice of such termination.

2.8    <u>Option to Obtain Discounted Satisfaction</u>. Subject to satisfaction of the conditions precedent set forth below, Dane and Lisa Siller shall have the option to satisfy the Restated Promissory Note in full, and obtain the reconveyance of the Deed of Trust, upon payment of the sum of $2,750,000 on or before close of business on the date 30 calendar days following Bankruptcy Court approval of this Agreement. The Deposit described in paragraph 2.7 above shall be applied to reduce the payment required under this paragraph.

2.9    <u>No Waiver</u>. No failure on the part of Plan Administrator to exercise and no delay in exercising any right or remedy will operate as a waiver; nor will Plan Administrator be estopped to exercise any right or remedy at any future time because of any failure or delay; nor will any single or partial exercise of any right or remedy preclude any other or further exercise or the exercise of any other right or remedy. The remedies provided are cumulative and not exclusive of any remedies provided by law. Without limiting the foregoing, nothing in this Agreement, or in any actions taken in connection with this Agreement or otherwise, shall be construed as a waiver or limitation on Plan Administrator's right to accelerate all amounts due under the Restated Promissory Note based on default under such Restated Promissory Note.

2.10    <u>No Waiver of Right of Reinstatement</u>. Regardless of whether or not Dane and Lisa Siller exercise the option set forth in paragraph 2.8 above, nothing contained in this Agreement shall constitute, nor shall be construed as, a waiver of any statutory right of Dane and Lisa Siller to cure existing or future defaults under the Restated Promissory Note, Deed of Trust or related documents, or to reinstate the loans memorialize by such Restated Promissory Note, Deed of Trust or related documents.

2.11    <u>Conditions Precedent</u>.

2.11.1    <u>Conditions Precedent to Obligations of Plan Administrator</u>. Plan Administrator's obligations pursuant to paragraph 2.6 (Forbearance) above are subject to the following conditions precedent:

2.11.1.1        Timely receipt of the Deposit as set forth in Paragraph 2.7.

3

2.11.1.2      Entry of an order of the Bankruptcy Court with jurisdiction over the Chapter 11 Case of CWS approving this Agreement and the transactions described herein.

2.11.2  Provisions That Are Effective Immediately. Except as to the obligations set forth in paragraph 2.7 (Forbearance) Plan Administrator and Dane and Lisa Siller acknowledge that the representations, warranties and agreements set forth in this Agreement are effective and enforceable immediately and not subject to conditions precedent.

2.11.3  Waiver. Each party shall have the power, but not the obligation, to waive any condition precedent operating to that party's benefit.

2.12    Termination.

2.12.1  The parties acknowledge and agree that Plan Administrator's obligations under this Agreement are subject to prior approval of the bankruptcy court, as set forth in paragraph 2.11.1 above. In connection with seeking approval of this Agreement, up to and including the time of the hearing on the motion seeking such approval, Plan Administrator will offer other persons the right and opportunity to submit competing bids for the purchase of CWS's rights under the Restated Promissory Note, Deed of Trust, and related documents.

2.12.2  If any of the following Termination Events ("Termination Events") occurs, either party shall have the right to terminate this Agreement by providing written notice to the other party:

2.12.2.1      Breach of the terms of this Agreement by the non-terminating party;

2.12.2.2      Acceptance by the Plan Administrator of an overbid as described above; or

2.12.2.3      Failure of the occurrence of a condition precedent on or before July 31, 2013.

2.12.3  Effect of Termination. In the event of termination of this Agreement, the Deposit described in paragraph 2.7 shall be returned to Dane and Lisa Siller within five working days. Notwithstanding Termination all representations, warranties and agreements of the parties shall remain enforceable and in effect, except:

2.12.3.1      Paragraph 2.6 (Forbearance)

2.12.3.2      Paragraph 2.8 (Option to Obtain Discounted Satisfaction")

## ARTICLE III

## MISCELLANEOUS PROVISIONS

3.1    Choice of Law. This Agreement shall be governed by, and construed in accordance with, the laws of the State of California.

3.2     <u>Time of the Essence</u>.  The parties agree that time is of the essence with respect to the parties' obligations hereunder and that timely performance of their obligations hereunder is a substantial consideration for each party's agreement and release hereunder.  For this reason, any delay in satisfaction of any obligation hereunder is a material breach.

3.3     <u>Waiver, Modification and Amendment</u>.  The parties may not waive any provision of this Agreement except by a written agreement that all of the parties have signed.  A waiver of any provision of this Agreement will not constitute a waiver of any other provision.  The parties may modify or amend this Agreement only by a written agreement that all of the parties have signed.

3.4     <u>Titles and Captions</u>.  The headings used in this Agreement are for reference only and are not a part of this Agreement.

3.5     <u>Entire Agreement</u>.  This Agreement contains the entire agreement of the parties with respect to the matters covered by this Agreement.  No promise or representation made by any party or by an officer, attorney or agent of any party that is not expressly contained in this Agreement shall be binding or valid.  Additionally, any modification of any provision of this Agreement, to be effective, must be in writing and signed by the party or parties to be charged.

3.6     <u>Execution of Additional Documents</u>.  The parties agree to execute and deliver any and all additional papers, documents, instruments and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of the parties.

3.7     <u>Execution of this Agreement</u>.  The parties may execute this Agreement in one or more counterparts, each of which constitutes an original, and all of which constitute one and the same Agreement.  A facsimile or copy of this Agreement executed by the parties, whether complete or in counterparts, will constitute sufficient evidence of the executed original of this Agreement for all purposes.

3.8     <u>Attorneys' Fees and Costs</u>.  In the event of breach of this agreement, the prevailing party in any action to recover damages or equitable relief shall be entitled to recover their reasonable attorneys' fees and costs.

3.9     <u>Binding on Successors and Assigns</u>.  This Agreement shall be binding upon and inure to the benefit of the respective successors, predecessors, heirs, assigns, officers, directors, shareholders, employees, partners, agents and attorneys of the parties to the extent provided by law.

3.10    <u>Jurisdiction</u>.  The Bankruptcy Court shall retain jurisdiction over any dispute arising under this Agreement or relating to the Property.

3.11    <u>Capacity of Plan Administrator</u>.  The parties acknowledge that David D. Flemmer is acting solely in his capacity as Plan Administrator of CWS in this matter and has no personal liability whatsoever with respect to this Agreement or the transactions described herein.

CWS Enterprises, Inc., a California corporation

DATED: 6/5/13    By: _____

David D. Flemmer
Plan Administrator of
CWS Enterprises, Inc.

DATED: _____    _____

Dane Siller

DATED: _____    _____

Lisa Siller

952562.3                                    6

3.11    _Capacity of Plan Administrator._  The parties acknowledge that David D. Flemmer is acting solely in his capacity as Plan Administrator of CWS in this matter and has no personal liability whatsoever with respect to this Agreement or the transactions described herein.

CWS Enterprises, Inc., a California corporation

DATED: _____

By: _____
      David D. Flemmer
      Plan Administrator of
      CWS Enterprises, Inc.

DATED: _6-4-13_

_____
Dale Siller

DATED: _6.4.13_

_____
Lisa Siller

9525623

6

Clerk

EXHIBIT "C"

AMENDED AND RESTATED PROMISSORY NOTE SECURED BY DEED OF
TRUST (NEWKON RANCH)

$3,150,000                                 January 13, 2009
                                           Sacramento, California

FOR VALUE RECEIVED, the undersigned Dane Siller and Lisa Siller (collectively "Borrower") hereby promise to pay to David D. Flemmer, in his capacity as Chapter 11 Trustee in the Chapter 11 case of CWS Enterprises, Inc., Case No. 09-26849-C-11, or order ("Lender"), the principal sum of Three Million One Hundred Fifty Thousand and 00/100 Dollars ($3,150,000.00), together with interest thereon on the unpaid principal balance of this Amended and Restated Promissory Note Secured by Deed of Trust ("Note") outstanding at an annual rate as set forth below from the date of this Note until fully paid at 400 Capitol Mall, 22nd Floor, Sacramento, California 95814, or at such other place as Lender may from time to time designate in writing.

1.    Interest.  Interest on the unpaid principal balance will accrue from January 13, 2009 at an annual rate of Six Percent (6%) per annum.

2.    Payment.  All sums due under this Note are payable in lawful money of the United States. Checks constitute payment only when collected.

3.    Method of Calculating Interest.  Interest shall be computed based on a 360-day year and the actual number of days elapsed. Interest computed based on a 360-day year is greater than interest computed based on a 365-day year.

4.    Payments and Maturity Date.  Borrower shall make interest payments as follows:

| Payment Date | Amount Due |
|---|---|
| May 30, 2010 | An amount equal to the rental revenue from the 2009 crop year. |
| May 30, 2011 | An amount equal to the rental revenue from the 2010 crop year. |
| May 30, 2012 | All accrued but unpaid interest through January 13, 2012. |
| May 30, 2013 | The lesser of $189,000 or the interest accrued from January 13, 2012 through January 12, 2013 |
| May 30, 2014 | The lesser of $189,000 or the interest accrued from |

506159.1

EXHIBIT _A_

| | January 13, 2013 through January 12, 2014 |
|---|---|
| May 30, 2015 | The lesser of $189,000 or the interest accrued from January 13, 2014 through January 12, 2015 |
| May 30, 2016 | The lesser of $189,000 or the interest accrued from January 13, 2015 through January 12, 2016 |
| May 30, 2017 | The lesser of $189,000 or the interest accrued from January 13, 2016 through January 12, 2017 |
| May 30, 2018 | The lesser of $189,000 or the interest accrued from January 13, 2017 through January 12, 2018 |

On January 13, 2019, all outstanding and unpaid principal plus all accrued and unpaid interest, plus fees, charges and other amounts due, if any, shall be immediately due and payable.

Notwithstanding the foregoing, if by September 30, 2012, (a) all scheduled and filed claims in the Chapter 11 case of CWS Enterprises, Inc. have not been deemed allowed, or adjudicated as allowed, disallowed, or partially allowed by final order of the bankruptcy court, or (b) all allowed claims in the Chapter 11 case of CWS Enterprises, Inc. have not been paid in full, the entire outstanding and unpaid principal, plus all accrued and unpaid interest, plus fees, charges and other amounts due, if any, shall become due and payable on March 31, 2013.

5.    Default.  On (a) Borrower's failure to pay any installment or other sum due under this Note when due and payable (whether by extension, acceleration, or otherwise), or (b) an Event of Default as defined in any Deed of Trust securing this Note, or (c) any breach of any other promise or obligation in this Note or in any other instrument now or hereafter securing the indebtedness evidenced by this Note, then, and in any such event, Lender may, at its option, declare this Note (including, without limitation, all accrued interest) due and payable immediately regardless of the Maturity Date. Borrower expressly waives notice of the exercise of this option.

6.    Late Charge.  Borrower acknowledges that default in the payment of any sum due under this Note will result in losses and additional expenses to Lender in servicing the indebtedness evidenced by this Note, handling such delinquent payments, and meeting its other financial obligations. Borrower further acknowledges that the extent of such loss and additional expenses is extremely difficult and impractical to ascertain. Borrower therefore agrees that, if any payment due under this Note is not made when due, a charge of Five Percent (5%) of such payment that is not paid when due would be a reasonable estimate of expenses so incurred (the "Late Charge"). If any payment is not received when due, Borrower shall pay the Late Charge to Lender (without prejudicing or affecting any other rights or remedies of Lender) as liquidated damages to cover expenses

506159.1

incurred in handling such delinquent payment.

7.     <u>Interest on Default</u>. In the event that any payment due under this Note is not received by Lender within Five (5) days when due, and in any event from and after the Maturity Date (either according to the terms of this Note or as the result of an acceleration of the then unpaid principal balance under the terms of this Note), the entire unpaid principal balance shall automatically bear an annual interest rate (instead of the rate specified in Paragraph 1) equal to the lesser of (a) Ten Percent (10%) or (b) the maximum interest rate allowed by law (the "Default Rate").

8.     <u>Interest on Interest</u>. If any interest payment under this Note is not paid when due, the unpaid interest shall be added to the principal of this Note, shall become and be treated as principal, and shall thereafter bear like interest.

9.     <u>Attorney Fees</u>. Borrower agrees to pay the following costs, expenses, and attorney fees paid or incurred by Lender, or adjudged by a court: (a) reasonable costs of collection and costs, expenses, and attorney fees paid or incurred in connection with the collection or enforcement of this Note, whether or not suit is filed; (b) reasonable costs, expenses, and attorney fees paid or incurred in connection with representing Lender in any bankruptcy, reorganization, receivership, or other proceedings affecting creditors' rights and involving a claim under this Note; (c) reasonable costs, expenses, and attorney fees incurred to protect the lien of the Deed of Trust; and (d) costs of suit and such sum as the court may adjudge as attorney fees in any action to enforce payment of this Note or any part of it.

10.     <u>Waiver</u>. Borrower, endorsers, and all other persons liable or to become liable on this Note waive presentment, protest, and demand; notice of protest, demand, and dishonor; and all other notices or matters of a like nature.

11.     <u>Notice</u>. Any notice required to be provided in this Note shall be given in writing and shall be sent (a) for personal delivery by a delivery service that provides a record of the date of delivery, the individual to whom delivery was made, and the address where delivery was made; (b) by first-class certified United States mail, postage prepaid, return receipt requested; or (c) by a nationally recognized overnight courier service, marked for next-day business delivery. All notices shall be addressed to the party to whom such notice is to be given at the property address stated in this Note, if any, or to such other address as a party may designate by written notice to the other. All notices shall be deemed effective on the earliest of (a) actual receipt; (b) rejection of delivery; (c) if sent by certified mail, the third day on which regular United States mail delivery service is provided after the day of mailing or, if sent by overnight delivery service, on the next day on which such service makes next-business-day deliveries after the day of sending.

12.     <u>Secured by Deed of Trust</u>. This Note is secured by that certain Deed of Trust with Assignment of Leases and Rents (the "Deed of Trust") dated as of January 14, 2009 made by Borrower, as trustor, for the benefit of Lender, as beneficiary. A default under any of the terms and provisions of the Deed of Trust shall also constitute a default

under this Note. AS SET FORTH IN THE DEED OF TRUST, IF BORROWER SHALL
SELL, CONVEY, OR ALIENATE THE PROPERTY (AS DESCRIBED IN THE DEED
OF TRUST), OR ANY PART THEREOF, OR ANY INTEREST THEREIN, OR
SHALL BE DIVESTED OF TITLE OR ANY INTEREST THEREIN IN ANY
MANNER OR WAY, WHETHER VOLUNTARILY OR INVOLUNTARILY,
WITHOUT THE WRITTEN CONSENT OF THE LENDER BEING FIRST HAD AND
OBTAINED, LENDER SHALL HAVE THE RIGHT, AT ITS OPTION, TO DECLARE
THIS NOTE, OR ANY OTHER INDEBTEDNESS OR OBLIGATION OF
BORROWER TO LENDER, IRRESPECTIVE OF THE MATURITY DATE
SPECIFIED IN THIS NOTE OR OTHER DOCUMENT EVIDENCING THE SAME,
IMMEDIATELY DUE AND PAYABLE.

13.    Forbearance Not a Waiver.   If Lender delays in exercising or fails to
exercise any of its rights under this Note, that delay or failure shall not constitute a
waiver of any Lender rights or of any breach, default, or failure of condition under this
Note. No waiver by Lender of any of its rights or of any such breach, default, or failure of
condition shall be effective, unless the waiver is expressly stated in a writing signed by
Lender.

14.    Assignment.    This Note inures to and binds the heirs, legal
representatives, successors, and assigns of Borrower and Lender; provided, however, that
Borrower may not assign this Note or any proceeds of it, or assign or delegate any of its
rights or obligations, without Lender's prior written consent in each instance. Lender in
its sole discretion may transfer this Note, and may sell or assign participations or other
interests in all or any part of this Note, all without notice to or the consent of Borrower.

15.    Governing Law.   This Note shall be construed and enforced according to
the laws of the State of California for all purposes.

16.    Usury.   All agreements between Borrower and Lender are expressly
limited, so that in no event or contingency, whether because of the advancement of the
proceeds of this Note, acceleration of maturity of the unpaid principal balance, or
otherwise, shall the amount paid or agreed to be paid to Lender for the use, forbearance,
or retention of the money to be advanced under this Note exceed the highest lawful rate
permissible under applicable usury laws. If, under any circumstances, fulfillment of any
provision of this Note or the Deed of Trust securing this Note or any other agreement
pertaining to this Note, after timely performance of such provision is due, shall involve
exceeding the limit of validity prescribed by law that a court of competent jurisdiction
deems applicable, then, ipso facto, the obligations to be fulfilled shall be reduced to the
limit of such validity. If, under any circumstances, Lender shall ever receive as interest an
amount that exceeds the highest lawful rate, the amount that would be excessive interest
shall be applied to reduce the unpaid principal balance under this Note and not to pay
interest, or, if such excessive interest exceeds the unpaid principal balance under this
Note, such excess shall be refunded to Borrower. This provision shall control every other
provision of all agreements between Borrower and Lender.

17.    Time Is of the Essence.   Time is of the essence with respect to all

506439.1

obligations of Borrower under this Note.

18.    THIS AMENDED AND RESTATED PROMISSORY NOTE AMENDS
AND RESTATES THE OBLIGATIONS UNDER THAT CERTAIN ALL-INCLUSIVE
LONG FORM PROMISSORY NOTE SECURED BY ALL-INCLUSIVE LONG FORM
DEED OF TRUST DATED JANUARY 14, 2009 IN THE ORIGINAL PRINCIPAL
AMOUNT OF $2,070,000 BY DANE AND LISA SILLER, AS MAKER/PAYORS
AND CWS ENTERPRISES, INC., A CALIFORNIA CORPORATION, AS PAYEE.

Executed at ~~Sacramento~~, California, on the 21st day of May
~~2009~~. Yuba City CA  
2010

BORROWER:

_____  
DANE SILLER

_____  
LISA SILLER

596459.1

## PROMISSORY NOTE PURCHASE AGREEMENT AND ASSIGNMENT

This Promissory Note Purchase Agreement and Assignment ("Agreement") is made as of July 31, 2013 by and between CWS Enterprises, Inc. ("Seller"), acting through David D. Flemmer, in his capacity as Plan Administrator ("Plan Administrator"), and South Yuba Investors, L.P., a California limited partnership ("Purchaser".)

### ARTICLE I

### RECITALS

1.1    CWS Enterprises, Inc. ("CWS") was created in 2007 in connection with a settlement of litigation between Charles Siller and others.  As part of the settlement, CWS received title to certain real property and cash.  Charles Siller received the stock of CWS.

1.2    On or about January 14, 2009 CWS transferred real property located in Sutter County and known as Newkon Ranch, APN 23-040-001, 23-040-004, 23-040-005, 23-040-062, 23-040-64 and 23-380-077 (the "Newkon Ranch") to Dane and Lisa Siller.  In exchange, Dane and Lisa Siller executed a promissory note in the amount of $2,070,000 to CWS (The "Original Newkon Ranch Note.")  The Original Newkon Ranch Note was secured by a deed of trust (the "Deed of Trust") on the Newkon Ranch.

1.3    On April 2, 2009 CWS commenced a voluntary case under Chapter 11 of the Bankruptcy Code.  On June 22, 2009 the United States Bankruptcy Court ordered that a trustee be appointed.  David D. Flemmer ("Trustee") was appointed as the Chapter 11 Trustee in CWS' Chapter 11 case.

1.4    On or about May 21, 2010 Dane and Lisa Siller and Trustee entered into that certain Settlement Agreement and Release dated, for reference purposes, as of January 10, 2010.  Pursuant to the Settlement Agreement and Release Agreement, the Sillers executed that certain Amended and Restated Promissory Note Secured By Real Property (Newkon Ranch) (the "Restated Promissory Note.").  A true and correct copy of the Restated Promissory Note is attached as Exhibit A hereto.

1.5    On April 16, 2012, the Bankruptcy Court entered that certain Order Approving Confirmation of Third Amended Joint Plan of Reorganization for CWS Enterprises, Inc. and Charles W. Siller, dated March 14, 2012 (the "Joint Plan").  Pursuant to the Joint Plan, David D. Flemmer was appointed as Plan Administrator of CWS.

1.6    Plan Administrator contends that Dane and Lisa Siller have made no payments on account of the Restated Promissory Note.  Dane and Lisa Siller dispute this assertion.

1

EXHIBIT C    PAGE 27

## ARTICLE II

## AGREEMENT

Based upon the foregoing, Seller and Purchaser agree as follows:

2.1    Purchase and Sale: At the closing of the transaction, Seller will sell and assign to Purchaser the Restated Promissory Note and Deed of Trust, Such sale shall be an absolute sale without recourse, and shall not be construed as a financing tool, assignment for security or any other arrangement other than as an absolute sale and assignment. The sale is an "as-is" sale.

2.2    Purchase Price:   In consideration of the sale of the Restated Promissory Note and Deed of Trust, Purchaser shall pay Seller the Purchase Price in readily available funds at closing. The Purchase Price shall be the highest amount bid by Purchaser at the hearing held before the United States Bankruptcy Court on Seller's motion for approval of this agreement (the "Purchase Price".) If requested by Seller, Purchaser shall execute a written confirmation of the Purchase Price in form reasonably requested by Seller.

2.3    Interim Payments.  Any payments (including insurance or condemnation proceeds) received by Seller with respect to the Restated Promissory Note after the conclusion of the hearing on the motion for approval of this agreement and before the close of escrow shall be the property of Seller and shall not be subject to any claim or lien whatsoever of Purchaser. Notwithstanding the foregoing, any such payment described in the preceding sentence, if received by Seller, shall be applied at Closing toward the Purchase Price.

2.4    Closing:  The transaction shall be accomplished through a conventional real property escrow at First American Title Insurance Company, Sacramento, California.  The costs of title insurance shall be paid by Purchaser.  All other costs and expenses shall be shared equally by Seller and Purchaser.

2.5    Deliveries at Closing:

2.5.1    Deliveries by Seller:  At the Closing Seller shall deliver to Purchaser the following items:

2.5.1.1 The original of the Restated Promissory Note;

2.5.1.2 An executed assignment of the Restated Promissory Note, in form reasonably requested by Purchaser; and

2.5.1.3 An executed assignment of the Deed of Trust, in form reasonably requested by Purchaser.

2.5.1.4 An assignment of Seller's rights under the Forbearance Option Agreement dated June 4, 2013.

2.5.2    Deliveries by Purchaser: At the Closing, Seller shall deliver to Purchaser the following items:

2

EXHIBIT C    PAGE 28

2.5.2.1 The Purchase Price. At Closing Seller shall be authorized to apply the Deposit toward the Purchase Price.

2.6     Closing Date:  Closing shall occur on the fifteenth calendar day occurring after the entry of an order of the Bankruptcy Court approving this transaction, except that if such date falls on a day that is not a business day, the closing shall occur on the next business day.

2.7     Deposit. On or before July 29, 2013, Purchaser agrees to provide a $100,000 deposit (the "Deposit") to Plan Administrator.  The Deposit shall be refundable to Purchaser unless and until the conditions precedent set forth in Article 3.2 below are satisfied.  Immediately upon satisfaction of the conditions precedent set forth in Section 3.2, the Deposit shall be released to the Plan Administrator.  If this Agreement is terminated prior to Closing for breach by Seller, Plan Administrator shall refund the Deposit to Purchaser.  If the Purchaser fails to close the transaction for any reason other than breach by Seller, Seller shall be entitled to apply the Deposit toward damages arising from breach of this Agreement, but the deposit does not constitute liquidated damages or a limit on Purchaser's liability for damages.

2.8     Representations or Warranties by Seller. Seller will represent and warrant that as of the date of Closing:

2.8.1   CWS Enterprises, Inc. is the legal and beneficial owner of the Promissory Note being assigned by it hereunder and that such interest is free and clear of any liens or other adverse claims of ownership;

2.8.2   CWS Enterprises, Inc. has full power and authority, and has taken all action necessary, to execute and deliver this Agreement and to consummate the transactions contemplated by it;

2.8.3   Except as disclosed to Purchaser, to the best of Plan Administrator's knowledge, Seller has not received any payments against the Restated Promissory Note; and

2.8.4   Except for the foregoing Seller makes no representations or warranties regarding the rights and assets being sold to Purchaser. Without limiting the foregoing, Seller makes no representations or warranties regarding the current indebtedness or enforceability of the Restated Promissory Note or Deed of Trust, or the value or condition of the real property encumbered by the Deed of Trust.

2.9     Representations by Purchaser.  Purchaser represents as follows:

2.9.1   The transaction memorialized herein is an "as-is" sale and Seller has made no express or implied representations or warranties except as set forth in Section 2.7 above.  Purchaser represents and warrants that it has had an ample opportunity to investigate the facts and circumstances underlying the Restated Promissory Note, the Deed of Trust, the Newkon Ranch and all other aspects of the transaction, and has independently reached its conclusions regarding the value of the assets, the enforceability of the instruments purchased herein, and all other aspects of the transaction.  Purchaser represents and warrants that it has not relied upon any representations or statements of Sellers or any representative of Seller, and has not relied on any purported duty of Seller or its representatives to disclose facts, in reaching its decision to enter into this transaction.

3

EXHIBIT C    PAGE 29

2.9.2    Neither Charles Siller, Seller, or anyone acting on their behalf, has made any representation or warranty to Purchaser regarding the rights and assets being sold to Purchaser, or the enforceability of the Promissory Note or Deed of Trust, or the value or condition of the real property encumbered by the Deed of Trust.

2.9.3    Purchaser has made no oral or written agreements with anyone other than Seller with respect to the Restated Promissory Note, the Deed of Trust, or the real property encumbered by the Deed of Trust.

2.10    Covenant of Purchaser.  Purchaser shall not obtain any personal judgment against Dane Siller or Lisa Siller, or any other payor under the Restated Promissory Note, for money owed under the Restated Promissory Note or Deed of Trust.  Without limiting the foregoing, in the event of breach or other non-compliance with this provision resulting in a judgment or other claim by Purchaser against Dane and Lisa Siller based on the Restated Promissory Note or Deed of Trust, Purchaser shall transfer such judgment claim to Seller at no additional consideration.  The foregoing shall not impair Purchaser's right to pursue foreclosure of the Deed of Trust by any available means, including judicial foreclosure or an action for tortious waste to the extent attributable to actions after the date hereof, condemnation proceeds or insurance proceeds.

## ARTICLE III

## CONDITIONS PRECEDENT

3.1    Conditions Precedent to Obligations of Seller.  Plan Administrator's obligations pursuant to this Agreement are subject to the following conditions precedent:

3.1.1    Timely receipt of the Deposit as set forth in Paragraph 2.7.

3.1.2    Timely receipt of the balance of the Purchase Price set forth in Paragraph 2.2.

3.1.3    Selection of Purchaser as the highest bidder at the hearing on the motion for approval of this agreement, or selection of Purchaser as a backup bidder provided that the highest bidder has failed to close on the transaction.

3.1.4    Entry of an order of the Bankruptcy Court with jurisdiction over the Chapter 11 Case of CWS approving this Agreement and the transactions described herein.

3.2    Conditions Precedent to Obligations of Purchaser.  Purchaser's obligations pursuant to this Agreement are subject to the following conditions precedent:

3.2.1    Selection of Purchaser as the highest bidder at the hearing on the motion for approval of this agreement, or selection of Purchaser as a backup bidder provided that the highest bidder has failed to close on the transaction.

3.2.2    Entry of an order of the Bankruptcy Court with jurisdiction over the Chapter 11 Case of CWS approving this Agreement and the transactions described herein.

4

EXHIBIT C    PAGE 30

3.2.3    Delivery of all documents to be delivered to Purchaser at closing pursuant to paragraph 2.5 of this Agreement.

## ARTICLE IV

## MISCELLANEOUS PROVISIONS

4.1    <u>Choice of Law</u>.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of California.

4.2    <u>Time of the Essence</u>.  The parties agree that time is of the essence with respect to the parties' obligations hereunder and that timely performance of their obligations hereunder is a substantial consideration for each party's agreement and release hereunder.  For this reason, any delay in satisfaction of any obligation hereunder is a material breach.

4.3    <u>Waiver, Modification and Amendment</u>.  The parties may not waive any provision of this Agreement except by a written agreement that all of the parties have signed.  A waiver of any provision of this Agreement will not constitute a waiver of any other provision.  The parties may modify or amend this Agreement only by a written agreement that all of the parties have signed.

4.4    <u>Titles and Captions</u>.  The headings used in this Agreement are for reference only and are not a part of this Agreement.

4.5    <u>Entire Agreement</u>.  This Agreement contains the entire agreement of the parties with respect to the matters covered by this Agreement.  No promise or representation made by any party or by an officer, attorney or agent of any party that is not expressly contained in this Agreement shall be binding or valid.  Additionally, any modification of any provision of this Agreement, to be effective, must be in writing and signed by the party or parties to be charged.

4.6    <u>Execution of Additional Documents.</u>  The parties agree to execute and deliver any and all additional papers, documents, instruments and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of the parties.

4.7    <u>Execution of this Agreement</u>.  The parties may execute this Agreement in one or more counterparts, each of which constitutes an original, and all of which constitute one and the same Agreement.  A facsimile or copy of this Agreement executed by the parties, whether complete or in counterparts, will constitute sufficient evidence of the executed original of this Agreement for all purposes.

4.8    <u>Attorneys' Fees and Costs</u>.  In the event of breach of this agreement, the prevailing party in any action to recover damages or equitable relief shall be entitled to recover their reasonable attorneys' fees and costs.

5

EXHIBIT C    PAGE 31

4.9    <u>Binding on Successors and Assigns</u>. This Agreement shall be binding upon and inure to the benefit of the respective successors, predecessors, heirs, assigns, officers, directors, shareholders, employees, partners, agents and attorneys of the parties to the extent provided by law.

4.10    <u>Jurisdiction</u>. The Bankruptcy Court shall retain jurisdiction over any dispute arising under this Agreement or relating to the Property.

4.11    <u>Capacity of Plan Administrator</u>. The parties acknowledge that David D. Flemmer is acting solely in his capacity as Plan Administrator of CWS in this matter and has no personal liability whatsoever with respect to this Agreement or the transactions described herein.

SELLER:

DATED: _____    CWS Enterprises, Inc., a California corporation

By: _____
          David D. Flemmer
          Plan Administrator of
          CWS Enterprises, Inc.

PURCHASER:

DATED: 7-30-13    South Yuba Investors, L.P.,
a California limited partnership

By:    South Yuba Investors, LLC, a
       California limited liability company,
       General Partner

By: _____
          Richard A. Leland
          Manger

6

EXHIBIT C    PAGE 32

EXHIBIT "C"

AMENDED AND RESTATED PROMISSORY NOTE SECURED BY DEED OF TRUST (NEWKON RANCH)

$3,150,000

January 13, 2009
Sacramento, California

FOR VALUE RECEIVED, the undersigned Dane Siller and Lisa Siller (collectively "Borrower") hereby promise to pay to David D. Flemmer, in his capacity as Chapter 11 Trustee in the Chapter 11 case of CWS Enterprises, Inc., Case No. 09-26849-C-11, or order ("Lender"), the principal sum of Three Million One Hundred Fifty Thousand and 00/100 Dollars ($3,150,000.00), together with interest thereon on the unpaid principal balance of this Amended and Restated Promissory Note Secured by Deed of Trust ("Note") outstanding at an annual rate as set forth below from the date of this Note until fully paid at 400 Capitol Mall, 22nd Floor, Sacramento, California 95814, or at such other place as Lender may from time to time designate in writing.

1.       Interest.  Interest on the unpaid principal balance will accrue from January 13, 2009 at an annual rate of Six Percent (6%) per annum.

2.       Payment.  All sums due under this Note are payable in lawful money of the United States. Checks constitute payment only when collected.

3.       Method of Calculating Interest.  Interest shall be computed based on a 360-day year and the actual number of days elapsed. Interest computed based on a 360-day year is greater than interest computed based on a 365-day year.

4.       Payments and Maturity Date.  Borrower shall make interest payments as follows:

| Payment Date | Amount Due |
| --- | --- |
| May 30, 2010 | An amount equal to the rental revenue from the 2009 crop year. |
| May 30, 2011 | An amount equal to the rental revenue from the 2010 crop year. |
| May 30, 2012 | All accrued but unpaid interest through January 13, 2012. |
| May 30, 2013 | The lesser of $189,000 or the interest accrued from January 13, 2012 through January 12, 2013 |
| May 30, 2014 | The lesser of $189,000 or the interest accrued from |

506459.1

EXHIBIT C    PAGE 33

| | January 13, 2013 through January 12, 2014 |
|---|---|
| May 30, 2015 | The lesser of $189,000 or the interest accrued from January 13, 2014 through January 12, 2015 |
| May 30, 2016 | The lesser of $189,000 or the interest accrued from January 13, 2015 through January 12, 2016 |
| May 30, 2017 | The lesser of $189,000 or the interest accrued from January 13, 2016 through January 12, 2017 |
| May 30, 2018 | The lesser of $189,000 or the interest accrued from January 13, 2017 through January 12, 2018 |

On January 13, 2019, all outstanding and unpaid principal plus all accrued and unpaid interest, plus fees, charges and other amounts due, if any, shall be immediately due and payable.

Notwithstanding the foregoing, if by September 30, 2012, (a) all scheduled and filed claims in the Chapter 11 case of CWS Enterprises, Inc. have not been deemed allowed, or adjudicated as allowed, disallowed, or partially allowed by final order of the bankruptcy court, or (b) all allowed claims in the Chapter 11 case of CWS Enterprises, Inc. have not been paid in full, the entire outstanding and unpaid principal, plus all accrued and unpaid interest, plus fees, charges and other amounts due, if any, shall become due and payable on March 31, 2013.

5.    Default.  On (a) Borrower's failure to pay any installment or other sum due under this Note when due and payable (whether by extension, acceleration, or otherwise), or (b) an Event of Default as defined in any Deed of Trust securing this Note, or (c) any breach of any other promise or obligation in this Note or in any other instrument now or hereafter securing the indebtedness evidenced by this Note, then, and in any such event, Lender may, at its option, declare this Note (including, without limitation, all accrued interest) due and payable immediately regardless of the Maturity Date. Borrower expressly waives notice of the exercise of this option.

6.    Late Charge.  Borrower acknowledges that default in the payment of any sum due under this Note will result in losses and additional expenses to Lender in servicing the indebtedness evidenced by this Note, handling such delinquent payments, and meeting its other financial obligations. Borrower further acknowledges that the extent of such loss and additional expenses is extremely difficult and impractical to ascertain. Borrower therefore agrees that, if any payment due under this Note is not made when due, a charge of Five Percent (5%) of such payment that is not paid when due would be a reasonable estimate of expenses so incurred (the "Late Charge"). If any payment is not received when due, Borrower shall pay the Late Charge to Lender (without prejudicing or affecting any other rights or remedies of Lender) as liquidated damages to cover expenses

EXHIBIT C    PAGE 34

incurred in handling such delinquent payment.

7.    Interest on Default.  In the event that any payment due under this Note is not received by Lender within Five (5) days when due, and in any event from and after the Maturity Date (either according to the terms of this Note or as the result of an acceleration of the then unpaid principal balance under the terms of this Note), the entire unpaid principal balance shall automatically bear an annual interest rate (instead of the rate specified in Paragraph 1) equal to the lesser of (a) Ten Percent (10%) or (b) the maximum interest rate allowed by law (the "Default Rate").

8.    Interest on Interest.  If any interest payment under this Note is not paid when due, the unpaid interest shall be added to the principal of this Note, shall become and be treated as principal, and shall thereafter bear like interest.

9.    Attorney Fees.  Borrower agrees to pay the following costs, expenses, and attorney fees paid or incurred by Lender, or adjudged by a court: (a) reasonable costs of collection and costs, expenses, and attorney fees paid or incurred in connection with the collection or enforcement of this Note, whether or not suit is filed; (b) reasonable costs, expenses, and attorney fees paid or incurred in connection with representing Lender in any bankruptcy, reorganization, receivership, or other proceedings affecting creditors' rights and involving a claim under this Note; (c) reasonable costs, expenses, and attorney fees incurred to protect the lien of the Deed of Trust; and (d) costs of suit and such sum as the court may adjudge as attorney fees in any action to enforce payment of this Note or any part of it.

10.    Waiver.  Borrower, endorsers, and all other persons liable or to become liable on this Note waive presentment, protest, and demand; notice of protest, demand, and dishonor; and all other notices or matters of a like nature.

11.    Notice.  Any notice required to be provided in this Note shall be given in writing and shall be sent (a) for personal delivery by a delivery service that provides a record of the date of delivery, the individual to whom delivery was made, and the address where delivery was made; (b) by first-class certified United States mail, postage prepaid, return receipt requested; or (c) by a nationally recognized overnight courier service, marked for next day business delivery. All notices shall be addressed to the party to whom such notice is to be given at the property address stated in this Note, if any, or to such other address as a party may designate by written notice to the other. All notices shall be deemed effective on the earliest of (a) actual receipt; (b) rejection of delivery; (c) if sent by certified mail, the third day on which regular United States mail delivery service is provided after the day of mailing or, if sent by overnight delivery service, on the next day on which such service makes next-business-day deliveries after the day of sending.

12.    Secured by Deed of Trust.  This Note is secured by that certain Deed of Trust with Assignment of Leases and Rents (the "Deed of Trust") dated as of January 14, 2009 made by Borrower, as trustor, for the benefit of Lender, as beneficiary.  A default under any of the terms and provisions of the Deed of Trust shall also constitute a default

506199.1

EXHIBIT C    PAGE 35

under this Note.  AS SET FORTH IN THE DEED OF TRUST, IF BORROWER SHALL SELL, CONVEY, OR ALIENATE THE PROPERTY (AS DESCRIBED IN THE DEED OF TRUST), OR ANY PART THEREOF, OR ANY INTEREST THEREIN, OR SHALL BE DIVESTED OF TITLE OR ANY INTEREST THEREIN IN ANY MANNER OR WAY, WHETHER VOLUNTARILY OR INVOLUNTARILY, WITHOUT THE WRITTEN CONSENT OF THE LENDER BEING FIRST HAD AND OBTAINED, LENDER SHALL HAVE THE RIGHT, AT ITS OPTION, TO DECLARE THIS NOTE, OR ANY OTHER INDEBTEDNESS OR OBLIGATION OF BORROWER TO LENDER, IRRESPECTIVE OF THE MATURITY DATE SPECIFIED IN THIS NOTE OR OTHER DOCUMENT EVIDENCING THE SAME, IMMEDIATELY DUE AND PAYABLE.

13.     Forbearance Not a Waiver.  If Lender delays in exercising or fails to exercise any of its rights under this Note, that delay or failure shall not constitute a waiver of any Lender rights or of any breach, default, or failure of condition under this Note. No waiver by Lender of any of its rights or of any such breach, default, or failure of condition shall be effective, unless the waiver is expressly stated in a writing signed by Lender.

14.     Assignment.  This Note inures to and binds the heirs, legal representatives, successors, and assigns of Borrower and Lender; provided, however, that Borrower may not assign this Note or any proceeds of it, or assign or delegate any of its rights or obligations, without Lender's prior written consent in each instance. Lender in its sole discretion may transfer this Note, and may sell or assign participations or other interests in all or any part of this Note, all without notice to or the consent of Borrower.

15.     Governing Law.  This Note shall be construed and enforced according to the laws of the State of California for all purposes.

16.     Usury.  All agreements between Borrower and Lender are expressly limited, so that in no event or contingency, whether because of the advancement of the proceeds of this Note, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to Lender for the use, forbearance, or retention of the money to be advanced under this Note exceed the highest lawful rate permissible under applicable usury laws. If, under any circumstances, fulfillment of any provision of this Note or the Deed of Trust securing this Note or any other agreement pertaining to this Note, after timely performance of such provision is due, shall involve exceeding the limit of validity prescribed by law that a court of competent jurisdiction deems applicable, then, ipso facto, the obligations to be fulfilled shall be reduced to the limit of such validity. If, under any circumstances, Lender shall ever receive as interest an amount that exceeds the highest lawful rate, the amount that would be excessive interest shall be applied to reduce the unpaid principal balance under this Note and not to pay interest, or, if such excessive interest exceeds the unpaid principal balance under this Note, such excess shall be refunded to Borrower. This provision shall control every other provision of all agreements between Borrower and Lender.

17.     Time Is of the Essence.  Time is of the essence with respect to all

EXHIBIT C     PAGE 36

obligations of Borrower under this Note.

18.   THIS AMENDED AND RESTATED PROMISSORY NOTE AMENDS AND RESTATES THE OBLIGATIONS UNDER THAT CERTAIN ALL-INCLUSIVE LONG FORM PROMISSORY NOTE SECURED BY ALL-INCLUSIVE LONG FORM DEED OF TRUST DATED JANUARY 14, 2009 IN THE ORIGINAL PRINCIPAL AMOUNT OF $2,070,000 BY DANE AND LISA SILLER, AS MAKER/PAYORS AND CWS ENTERPRISES, INC., A CALIFORNIA CORPORATION, AS PAYEE.

Executed at ~~Sacramento~~ Yuba City DS LS, California, on the 21st day of May ~~2009~~ 2010

BORROWER:

_____
DANE SILLER

_____
LISA SILLER

506159.1

EXHIBIT C    PAGE 37